Charlotte Ann JAMIESON, By and Through Her Father and Next Friend, Billy G. JAMIESON, and Billy G. Jamieson, Individually, Plaintiffs-Appellants,

v.

John SHAW, James Algee, Willie F. Jones, David Seale, City of Holly Springs, William T. Barrett, and Donald Butler, Defendants-Appellees.

No. 84–4387.

United States Court of Appeals, Fifth Circuit.

Oct. 7, 1985.

Rehearing and Rehearing En Banc Denied Nov. 8, 1985.

E. Grady Jolly, Circuit Judge, filed a dissenting opinion.

Jim Waide, West Point, Miss., W.O. Luckett, Jr., Clarksdale, Miss., for plaintiffs-appellants.

Sumners, Hickman & Rayburn, S.T. Rayburn, Richard C. Coker, Oxford, Miss., for Shaw, Algee, Jones & Seale.

William C. Spencer, Holly Springs, Miss., for City of Holly Springs, Coopwood, Bonds, Collins, Henley, Warren & Strickland.

Donald G. Barlow, Stephen J. Kirchmayr, Sp. Asst. Atty. Gen., Jackson, Miss., for Barrett, Miss. Hwy. & Butler.

Before JOHNSON, JOLLY, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Charlotte Ann Jamieson, a minor, was seriously injured when the car in which she was riding struck a roadblock placed on a state highway by officers of the Holly Springs, Mississippi, Police Department and the Mississippi Highway Safety Patrol. Pursuant to 42 U.S.C. § 1983, Jamieson, through her father, Billy G. Jamieson, brought this action alleging a deprivation of her constitutional rights. The district court dismissed Jamieson's first amended complaint under Fed.R.Civ.P. 12(b)(6) and then denied leave to amend that complaint.

We reverse because her second amended complaint stated a claim cognizable under the Fourth Amendment.

## I.

■ Viewed in the light most favorable to her, Jamieson's first amended complaint alleged the following facts.[1] In the pre-dawn hours of July 25, 1982, Jamieson was a passenger in a car driven by Jerry Gammons. Gammons' wife, Versie, was the only other passenger. Gammons had been operating the car in conformity with all applicable laws when, as he halted at a traffic signal, a car occupied by three Holly Springs police officers stopped behind his car. When the signal changed, Gammons accelerated the car to a speed exceeding the speed limit; the police officers followed and a high speed chase ensued. The police officers knew there was no outstanding warrant for Gammons' arrest, that Gammons had been treated for mental illness, and that there were passengers in the car who were suspected of no wrongdoing.

During the chase the police officers called for assistance from the state highway patrol. William T. Barrett answered the call and set up a "deadman" roadblock in the highway just ahead of Gammons' car. The roadblock consisted of an unlighted police car parked laterally in the middle of the highway just over the crest of a hill. Just as Gammons' car, still traveling at a high rate of speed, reached the top of the hill, Barrett flashed a bright spotlight in Gammons' eyes, blinding him momentarily and causing him to lose control of the car and crash into the roadblock. Gammons was then arrested. Jamieson sustained severe injuries from the impact.

Jamieson's first amended complaint named as defendants John Shaw, James Algee, and Willie F. Jones, the Holly Springs police officers who occupied the chase car; Barrett, the highway patrolman

who provided the roadblock car; the City of Holly Springs, its mayor and aldermen; its Chief of Police, David Seale; and the Mississippi Highway Safety Patrol and its chief, Donald Butler. The complaint alleged that use of the roadblock inflicted "cruel and unusual punishment" on Jamieson, deprived her of her "civil rights," and constituted assault and battery by the application of unnecessary, unreasonable, and excessive force in attempting to stop and arrest Gammons. Thus, she relied on the Eighth Amendment and certain, unnamed, "civil rights." She also asserted various claims of negligence in connection with the positioning of the roadblock.

The district court dismissed the claims against officers Shaw, Algee, Jones, and Barrett for two reasons. First, the court concluded that *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), precluded recovery under the Fourteenth Amendment since the complaint "alleged little more than automobile negligence." Second, as to the excessive force allegations, the court concluded that *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir.1981), which involved the "excessive use of force" by police, did not apply. The court stated that use of the roadblock "fell leagues short of the egregious exercise of physical violence prohibited by the Constitution...." The court held that the Eighth Amendment claim was without merit, since that amendment does not protect litigants not convicted of a crime. *See Thibodeaux v. Bordelon,* 740 F.2d 329, 333–34 (5th Cir. 1984) ("the eighth amendment protects only those who have been convicted of a crime").[2] The court also dismissed the claims against Chief Butler of the Mississippi Highway Safety Patrol and Chief Seale of the Holly Springs Police Department for failure to allege a pattern of similar incidents and dismissed the claims against the Patrol itself on Eleventh Amendment grounds. Finally, the court dismissed the

---

1. We review rulings on motions to dismiss under Rule 12(b)(6) by taking the pleadings as true and viewing them in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

2. Jamieson does not raise an Eighth Amendment claim on appeal. We therefore do not discuss this theory.

claims against the city of Holly Springs, its mayor and five aldermen for unstated reasons.

Jamieson then sought leave to file a second amended complaint in which she asserted that her Fourth Amendment rights had been violated. This complaint alleged, based on the same factual background as that stated in the first amended complaint, that the officers intentionally violated the Fourth Amendment by attempting to stop Gammons' car without probable cause and by using unreasonable means, *i.e.*, the roadblock, to make an arrest.[3] The district court found that the proposed complaint was nothing more than "window dressing" on the prior claims of negligence, and that Jamieson lacked "standing" to assert the Fourth Amendment claim since she was not the target of the pursuit and stop. The court therefore denied leave to file the second amended complaint and entered final judgment dismissing Jamieson's suit.

## II.

Jamieson challenges the district court's refusal to permit her to amend her complaint a second time. As noted, the court refused the amendment because it found that the amendment added nothing to her previous complaint and because it determined that Jamieson did not have standing to assert a Fourth Amendment violation. The amendment was refused, in short, because the court thought it futile.

Fed.R.Civ.P. 15(a)[4] permits amendment of a pleading after a responsive pleading has been served with leave of court. However, the court should freely give leave to amend "when justice so requires." It is often said that this determination rests in the sound discretion of the

district court. *See, e.g., Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir.1982), *cert. denied,* — U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). However, the Rule "evinces a bias in favor of granting leave." *Id.* (quoting *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 597 (5th Cir.1981)). The policy of the federal rules is to permit liberal pleading and amendment, thus facilitating adjudication on the merits while avoiding an excessive formalism. *Dussouy,* 660 F.2d at 598, (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). Thus, if the district court lacks a "substantial reason" to deny leave, its discretion "is not broad enough to permit denial." *Id.*

Among the acceptable justifications for denying leave to amend are undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendment, undue prejudice to the opposing party, and the futility of the amendment. *Union Planters National Leasing, Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir.1982). Even if substantial reason to deny leave exists, the court should consider prejudice to the movant, as well as judicial economy, in determining whether justice requires granting leave. *Id.* When futility is advanced as the reason for denying an amendment to a complaint, the court is usually denying leave because the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint. *See, e.g., Pan-Islamic Trade Corp. v. Exxon*, 632 F.2d 539, 546 (5th Cir.1980), *cert. denied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). Consequently, review of such a denial tends to

---

**3.** In her second amended complaint, Jamieson did not name the mayor or aldermen of Holly Springs. Further, in her motion to file that complaint she conceded the propriety of the court's ruling that the Mississippi Highway Safety Patrol was shielded by the Eleventh Amendment. Since Jamieson does not press her claims against these defendants on appeal, we deem them abandoned. *See Red v. Blackburn*, 636 F.2d 1027, 1028 (5th Cir.1981).

**4.** Rule 15(a) provides, in part, as follows:
> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

blur the distinction between analysis of the procedural context under Rule 15(a) and analysis of the sufficiency of the complaint under Rule 12(b)(6). *Id.* at 546; *see also Emory v. Texas State Board of Medical Examiners,* 748 F.2d 1023, 1027 (5th Cir. 1984); *Chitimacha Tribe,* 690 F.2d at 1164; *Dussouy,* 660 F.2d at 599–600.

The district court here denied leave to amend only because it considered the amendment futile. The district court did not conclude, nor have the defendants argued, that permitting amendment would have caused undue delay or prejudice, or that the amendment was offered in bad faith or with a dilatory motive. Denial was premised solely on the court's evaluation of the amendment as insufficient to state a claim under the Fourth Amendment. Thus, if the court's evaluation was deficient, we must reverse the order denying leave to amend.

### III.

■ In reviewing the sufficiency of a complaint, we accept the allegations as true, viewing them in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint must stand "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). This standard exhorts us to excuse mere artless drafting and to overlook superfluous argument in the interest of locating the substance of the pleader's claim. We think that Jamieson's second amended complaint stated a cause of action cognizable under the Fourth Amendment, made applicable to the states by the Fourteenth Amendment. Jamieson has asserted claims against the four officers directly involved in placing the roadblock as well as the city of Holly Springs and certain policy-making officials. We treat each group of defendants separately.

### A.

The second amended complaint, reciting facts similar to those stated above, alleged a violation of the Fourth Amendment which, in the words of the complaint, "prohibits unreasonable seizure of a person and prohibits arrests without probable cause", by the three Holly Springs police officers and the Mississippi highway patrolman who supplied the car for the roadblock. The essence of the allegations is that the stop of Gammons' car amounted to a "seizure" of Jamieson as contemplated by the Fourth Amendment, a seizure that was "unreasonable" by virtue of the means used to accomplish it and the absence of probable cause to support it.

■ "Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner,* — U.S. —, —, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (citing *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975)). The Fourth Amendment demands that such seizures be "reasonable" not only in terms of the reason for the seizure, *Brown v. Texas,* 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979), but also in terms of the manner in which it is accomplished. *Garner,* — U.S. at —, 105 S.Ct. at 1699. In *Garner,* the Court condemned the use of deadly force against a fleeing, but unarmed, suspect notwithstanding the presence of probable cause to believe a burglary had been committed when the only justification offered for the use of that level of force was prevention of escape. at —, 105 S.Ct. at 1706. The Court held that this was an unreasonable seizure under the Fourth Amendment and nullified the Tennessee statute that purported to give the officer authority to act as he did. *Id.* Thus, it is now settled that the Fourth Amendment limits the level of force that may be used to accomplish a seizure of the person: the level of force must be "reasonable." *Id.*[5]

5. While the *Garner* majority comprised only six members of the Court, the notion that the

This Court has similarly prohibited as excessive a police officer's striking a tourist who was photographing an arrest scuffle in which the tourist was not directly involved. *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir.1981). We premised that prohibition on alternative constitutional guarantees: "[t]he right to be free of state-occasioned damage to a person's bodily integrity ... [as] protected by the fourteenth amendment guarantee of due process," *id.* (citing *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980)), and "the fourth amendment guarantee of '[T]he right of ... people to be secure in their persons,' made applicable to the states by the fourteenth amendment." *Id.* at 265 (quoting *Jenkins v. Averett,* 424 F.2d 1228, 1232 (4th Cir.1970)) (brackets and ellipses in *Shillingford*). Finding its constitutional source in the Fourth Amendment, we hold that Jamieson's claim, as articulated in her second amended complaint, is theoretically sound: she was "seized" for purposes of the Fourth Amendment when the officers deliberately placed the roadblock in front of the car in which they knew she was a passenger.

The district court doubted that use of the roadblock could be characterized as "force," but even granting this, the court held that it could "be stated with certainty that [highway patrolman Barrett's] actions ... fell leagues short of the egregious exercise of physical violence prohibited by the Constitution." [6] The court, however, could not properly have made this determination merely on the pleadings.

▇▇▇▇▇▇▇ To be actionable under section 1983, injuries inflicted by state law enforcement officers must transcend the concerns of state tort law and take on constitutional proportions. *Baker v. McCollan,* 443 U.S. 137, 138 & 146, 99 S.Ct. 2689, 2691 & 2696, 61 L.Ed.2d 433 (1979); *Shillingford,* 634 F.2d at 265. Under the Fourth Amendment, the proportions of such an injury can only be gauged by balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Garner,* —— U.S. at ——, 105 S.Ct. at 1699 (quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)). This balancing is "the key of the Fourth Amendment," and without doubt applies to the manner in which a seizure is accomplished. *Id.* —— U.S. at ——, 105 S.Ct. at 1698–99. By its very nature, this balancing test can only be applied to "the totality of the circumstances." *Id.* at ——, 105 S.Ct. at 1700. This Court has adopted a similar test,[7] explaining it as follows:

> In determining whether the state officer has crossed the constitutional line that would make the physical abuse actionable under Section 1983, we must inquire into the amount of force used in relationship to the need presented, the extent of the injury inflicted and the motives of the state officer. If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983. *Hall v. Tawney,* 621 F.2d at 613; *Johnson v. Glick,* 481 F.2d [1028] at 1033 [ (2nd Cir. 1973) ].

Fourth Amendment restricts the magnitude of force that may be used to accomplish a stop, that is, the notion that the officer "seized" Garner by shooting him, garnered unanimous support. —— U.S. at ——, 105 S.Ct. at 1708 (O'Connor, J., dissenting).

**6.** The defendants misunderstand the crux of Jamieson's complaint when they characterize the complaint as merely a challenge to the propriety of the high-speed chase rather than to the use of

the roadblock. This was not the only aspect of the complaint. We, as did the district court, take the alleged facts in the light most favorable to Jamieson and consider her challenge to the propriety of using a roadblock in these circumstances.

**7.** While we did not expressly premise this test solely on the Fourth Amendment as the *Garner* Court did, we were concerned with the same competing interests.

*Shillingford,* 634 F.2d at 265, *quoted in Raley v. Fraser,* 747 F.2d 287, 289 (5th Cir.1984).

■■■ From the face of Jamieson's complaint the district court could not have evaluated the magnitude of the need for the roadblock, the relationship of the level of force to that need, the severity of Jamieson's injuries, or the motives that drove highway patrolman Barrett and the three city police officers. Resolution of these factual issues is essential to the proper evaluation of the question whether the force applied was proportionate to the need for action.[8] *See Raley v. Fraser,* 747 F.2d at 289. In addition, these issues must be developed and resolved before it can properly be concluded that Jamieson is complaining of "little more than automobile negligence" such that *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) forecloses her claims. Therefore, since her second amended complaint stated a cause of action against Barrett, Shaw, Algee, and Jones under the Fourth Amendment, *Garner,* — U.S. at — - —, 105 S.Ct. at 1698–99, the district court erred in denying Jamieson leave to amend to that extent. *Dussouy,* 660 F.2d at 599–600.[9]

■■■ We do not hold that Rule 15(a) requires the district court in every case to grant leave to amend when the amended complaint states a cause of action. As noted earlier, other considerations may justify denial in a proper case. *See Union Planters,* 687 F.2d at 121. However, where, as here, the only proffered justification for denial is futility, the determination that the complaint is legally sufficient and not cumulative deprives the district court of all "substantial reason" to deny leave and severely restricts its discretion to do so. *Dussouy,* 660 F.2d at 598. In such a case, leave to amend should be granted. Justice requires no less. Fed.R.Civ.P. 15(a).

■■■ We pause to address the district court's assertion that Jamieson lacked "standing," under *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), to pursue her complaints under the Fourth Amendment. *Rakas* stands for the proposition that an individual may not vicariously assert that a search violated the Fourth Amendment in order to exclude evidence in his own criminal trial when he had no expectation of privacy in the place searched. In *Rakas,* the Supreme Court discouraged the use of the term "standing" for this proposition, stating that the proper inquiry is whether the individual asserting the constitutional violation is asserting that individual's own rights. *Id.* at 133, 99 S.Ct. at 425. Here Jamieson challenges not only the arrest of Gammons without probable cause, but also the seizure of her person which, she alleges, was unreasonable by virtue of the excessive force employed to accomplish it. The former, as the district court correctly assumed, is an assertion by Jamieson of another's rights and cannot

---

8. The dissent undertakes to resolve certain of these factual issues. *See infra* part III of dissenting opinion. Its particular resolution of the issues, entailing as it does certain choices among possible factual scenarios, is not an argument that Jamieson could not *possibly* prove a set of facts that *would* support her Fourth Amendment claim if given the opportunity. For example, we think it altogether possible that Jamieson could prove facts indicating that the manner in which the roadblock was set up constituted a use of "deadly force." We are compelled by the Federal Rules to give her the opportunity to show what facts she can to support her claim.

9. None of the defendants asserted qualified immunity, as that theory was articulated in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73

L.Ed.2d 396 (1982), as a basis for his motion to dismiss; nor did the district court address the immunity issue in its orders of dismissal; nor was the issue raised, briefed or argued on this appeal. Prudence and fairness counsel us, now as in the past, to decline consideration of such issues until the district court has had an opportunity to evaluate them. *See e.g., Wells v. Rushing,* 760 F.2d 660, 661 (5th Cir.1985) (issues not raised on appeal); *Joseph v. New Orleans Electrical Pension and Retirement Plan,* 754 F.2d 628, 630–31 (5th Cir.1985). On remand, however, the district court should require Jamieson to allege specific facts rebutting any such claim of immunity, as required by *Elliott v. Perez,* 751 F.2d 1472, 1482 (5th Cir.1985), which was decided almost a year after Jamieson sought to file her second amended complaint.

stand, but the latter is a proper assertion of her own Fourth Amendment right to be free from the "unreasónable" application of force when she is "seized." The alleged lack of probable cause stands as one of many factors bearing on the reasonableness inquiry outlined above. The amendment bearing Jamieson's Fourth Amendment challenge should therefore be allowed.

### B.

The district court dismissed the claims against the city of Holly Springs; Chief Seale of the Holly Springs Police Department; and Chief Butler of the Mississippi Highway Safety Patrol (collectively, the supervisory defendants), apparently holding that even if a constitutional deprivation had been sufficiently alleged, these parties could not be responsible for it. We disagree. Since the second amended complaint alleges sufficient official misconduct to state a claim under the standards set forth in *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir.1984), *rehearing denied*, 735 F.2d 861 (1984), and *Webster v. City of Houston*, 735 F.2d 838 (5th Cir.1984) (en banc), leave to amend should not have been denied, particularly since the *Webster* standard was not announced until after Jamieson sought leave to file her second amended complaint.

Conceding that the supervisory defendants cannot be held responsible under a theory of respondeat superior, Jamieson contends that the allegations contained in her second amended complaint are sufficient under *Bennett* and *Webster*. In *Bennett*, 728 F.2d at 767, this Court stated:

> If a city may be liable only where the injury is inflicted in the execution of city policy, the complainant must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of the policy.

In *Webster*, 735 F.2d at 841, we elaborated: Official policy is:

\* \* \* \* \* \*

> A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

 Jamieson has alleged the existence of a practice of ignoring Fourth Amendment requirements in police work engaged in by Holly Springs police officers as well as a practice, on the part of the city, of failing adequately to train and supervise these officers. She explicitly alleges that these practices amounted to an "official policy," the critical term used in *Bennett* and defined in *Webster*. She alleges that this policy was made by Chief Seale, that he had authority to make such policy, and that execution of the policy resulted in her injury. She alleged that Chief Butler of the Highway Safety Patrol perpetuated a similar policy. She has thus alleged causal connections between the city and its officials on one hand and the policy itself on the other, and between the policy and her injury as required by *Bennett*.[10]

---

**10.** More specifically, Jamieson alleged that the city of Holly Springs had "perpetuated a policy and procedure ... which policy was in violation of United States Constitution Amendment Four" with respect to arrests, and that the city "fail[ed] to instruct its police officers" to comply with the Fourth Amendment when making arrests. Jamieson further alleged that Chief of Police Seale had authority to establish city policy with re-

spect to Fourth Amendment compliance, that he failed to establish such policy and, instead, "perpetuated an official policy of permitting ... officers to stop persons ... in violation of United States Constitution Amendment Four." She alleged that this "policy ... was a proximate cause of the damages to [her]." In addition, Jamieson alleged that Chief Butler was responsible for establishing procedures for compliance

The supervisory defendants argue that the allegations are insufficient to state a claim for failure to train and supervise the officers. In *Languirand v. Hayden*, 717 F.2d 220, 227–28 (5th Cir.1983), *cert. denied, sub. nom. Languirand v. Pass Christian,* — U.S. ——, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984), we addressed the failure to train issue:

> We conclude that if there is a cause of action under section 1983 for failure to properly train a police officer whose negligent or grossly negligent performance of duty has injured a citizen, that such failure to train must constitute gross negligence amounting to conscious indifference, and that a municipality is not liable under section 1983 ... in the absence of evidence at least of a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force.

By alleging a "practice and procedure" of violating the Fourth Amendment, and a failure to instruct and train officers regarding compliance with the Fourth Amendment, Jamieson has sufficiently alleged a "pattern of similar incidents" or widespread incompetence or misbehavior under *Languirand.* We cannot read the federal rules, supported as they are by a policy of liberal construction,[11] and requiring as they do only notice pleading,[12] to demand specific factual allegations describing other such incidents or misbehavior.

Whether Jamieson will be able to marshall sufficient evidence to *support* the allegations as required by *Languirand* is an issue we are not called upon to address. Nevertheless, we note, as does the dissent, that the Supreme Court has recently held

that "[p]roof of a single incident of unconstitutional action is not sufficient to impose liability under *Monell* [*v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)], unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *City of Oklahoma City v. Tuttle,* — U.S. ——, ——, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (June 3, 1985). Clearly considering that such proof would be impossible in relation to a claim of failure to train and supervise police officers, the Court held that, to support such a claim, "[t]he existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case" to impose liability under *Monell.* *Id.* at ——, 105 S.Ct. at 2436. In so holding the Court intended to foreclose a jury from imposing liability on a governing body merely "upon proof that it employed a non-policy making officer who violated the Constitution." *Id.* On remand, the district court should take care to heed the teachings of *Tuttle* concerning the level of proof necessary to support a claim of failure to train and supervise.

In *Tuttle,* the Court was not concerned with pleading problems, only problems of proof, and it thus had no occasion to consider tightening the rules of pleading as applied to claims of failure to train and supervise. Thus, because Jamieson's complaint alleges the existence of an unconstitutional policy condoned by policy-making officials, and an affirmative link between that policy and the actions that injured her, we hold that Jamieson's second amended complaint sufficiently states a claim against the supervisory defendants and it should there-

---

with the Fourth Amendment, that he failed to do so, and that he condoned the use of stop and arrest tactics that violated the Fourth Amendment.

**11.** *See* Fed.R.Civ.P. 8(f), *Dussouy,* 660 F.2d at 598.

**12.** *See* Fed.R.Civ.P. 8(a)(2), (e)(1); *Williams v. United Credit Plan of Chalmette, Inc.,* 526 F.2d 713, 714 (5th Cir.1976).

fore be instated as against them.[13] To the extent Jamieson desires to amend her complaint, after remand, to comply more closely with *Bennett* and *Webster*, as well as with *Tuttle, Garner* and *Shillingford*, she should be permitted to do so.[14]

We therefore VACATE the district court's judgment of dismissal as to the defendants except as to the mayor and aldermen of the city of Holly Springs, REVERSE the district court's denial of Jamieson's motion for leave to amend, and REMAND for further proceedings.

VACATED IN PART; REVERSED IN PART; and REMANDED.

E. GRADY JOLLY, Circuit Judge, dissenting:

Because I cannot accept that the district court abused its discretion in finding that the second amendment to the complaint would be futile, I respectfully dissent. The plaintiffs here, after ample opportunity to examine and correct the deficiencies of the complaint, were nevertheless unable to adequately allege the existence of an official policy or custom as required by the *City of Oklahoma v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); nor were they able to allege facts, especially such as pertain to malice as required by our decision in *Shillingford*, that would demonstrate the use of unreasonable force; indeed, under *Garner* the facts as alleged in the complaint authorized the police conduct in question here. Although the majority correctly reminds us of the right of the plaintiff to an opportunity to prove his case, we need not be blind to the right of the defendant here—the right not to be put through unnecessary and futile litigation with all its attendant expense that needlessly drains the public purse.

I

In holding that the district court abused its discretion in disregarding the conclusory allegations of the complaint, the majority ignores a host of our cases. Recently, we plainly stated: "We, and other courts, have tightened the application of Rule 8 where the very nature of the litigation compels it. In the now familiar cases invoking 42 U.S.C. § 1983, we consistently require the claimant to state specific facts, not merely conclusory allegations." *Elliott v. Perez*, 751 F.2d 1472, 1479 (5th Cir.1985). The list of cases rejecting the majority's approach is extensive. *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir.1985) (Hill, J. joining) ("To cure the defect in his ... allegation, [the plaintiff] would need to allege *facts*, not the 'theoretical foundation' of the claim." (emphasis in original)); *Arsenaux v. Roberts*, 726 F.2d 1022 (5th Cir.1982) (more than conclusory allegations necessary to state a claim under section 1983); *Hanson v. Town of Flower Mound*, 679 F.2d 497 (5th Cir.1982) (pleader must allege facts, not legal conclusions to state a claim under section 1983); *Johnson v. Wells*, 566 F.2d 1016 (5th Cir.1978) (in a section 1983 action applicant must allege facts which, if proved, warrant the relief he seeks); *Parish v. N.C.A.A.*, 506 F.2d 1028 (5th Cir. 1975) (conclusory allegations no substitute for factual showing of actual discriminatory intent); *Cook v. Whiteside*, 505 F.2d 32 (5th Cir.1974) (complaint insufficient to state a claim under section 1983 where it failed to allege facts). *See also Slotnick v. Staviskey*, 560 F.2d 31 (1st Cir.1977) (complaints cannot survive motion to dismiss if they contain conclusory allegations but do not support their claims with references to

---

**13.** The defendants' final argument—that because the Fourth Amendment applies to the state only by incorporation through the Fourteenth Amendment, Jamieson must show a Fourth Amendment deprivation without procedural due process—is without merit. The argument, based on a misreading of *Parratt v. Taylor*, was conclusively laid to rest in *Augustine v. Doe*, 740 F.2d 322, 325–27 (5th Cir.1984).

**14.** The complaint also alleged violations of Mississippi law and Section 23 of the Mississippi Constitution which guarantees the right of individuals to be "secure ... in their persons ... from unreasonable seizure." These claims are not in issue on this appeal. Jamieson will be free to pursue these claims as well after remand.

material facts) (cited with approval in *Sparks v. Duval County Ranch,* 604 F.2d 976, 978 (5th Cir.1979) (en banc)). For similar holdings in other circuits, *see, e.g., Hurney v. Carver,* 602 F.2d 993 (1st Cir. 1979); *Albany Welfare Rights Org. Day Care Center, Inc. v. Schreck,* 463 F.2d 620 (2d Cir.1972), *cert. denied,* 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973); *Rotolo v. Borough of Charleroi,* 532 F.2d 920 (3d Cir.1976); *Place v. Shepherd,* 446 F.2d 1239 (6th Cir.1971); *Cohen v. Illinois Institute of Technology,* 581 F.2d 658 (7th Cir. 1978), *cert. denied,* 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979); *Harley v. Oliver,* 539 F.2d 1143 (8th Cir.1976); *Uston v. Airport Casino, Inc.,* 564 F.2d 1216 (9th Cir.1977); *Taylor v. Nichols,* 558 F.2d 561 (10th Cir.1977).

Moreover, the cases cited by the majority do not support its position that the district court abused its discretion. *Chitimacha, Emory* and *Pan-Islamic* all affirm district court denials of leave to amend: "The [district] court can consider many factors in exercising its discretion 'such as ... futility of the amendment ...'," *Pan-Islamic,* 632 F.2d at 546. Under *Dussouy,* we are required to defer to the district court if there is any substantial reason to hold that an amendment would be futile. Such substantial reasons clearly exist here.

I want to emphasize that this was a *second* amended complaint. We are not assessing a hastily drawn statement by lawyers with a legitimate case but too busy to observe technical rules of pleading. Fed.R.Civ.P. 11 should make clear that the district court did not abuse its discretion in implying that the failings of the complaint are not merely technical. Rule 11 now requires "reasonable inquiry" to assure that a complaint be *"well grounded in fact"*:

> The new language stresses the need for some prefiling inquiry into both the fact and the law.... The standard is one of reasonableness under the circumstances.... This standard is more stringent than the original good-faith formula and

is thus expected that a greater range of circumstances will trigger its violation. Fed.R.Civ.P. 11, 1983 Advisory Committee Note.

It is only reasonable, and surely within the trial court's discretion *regarding a second amendment,* to require a plaintiff whose claim depends on a pattern of brutality of public officials to be able to identify one or two such incidents before being allowed to conduct discovery. Public brutality is not, after all, something that can be discovered only in the defendants' files.

## II

Let me demonstrate why it is pellucid to me that the district court should be affirmed and why Holly Springs, Mississippi, should not have to pay tax dollars to defend this case. *Tuttle* held that proof of a custom or policy of excessive force could not rest on a single incident. Here, no other incident involving injury or threat of injury is alleged even in general terms. The complaint in this respect is therefore inadequate.

The majority holds that a plaintiff may state a claim of excessive force against a city by alleging a single incident together with a summary allegation that the incident resulted from a "policy" or "custom" of failure to train. Addressing the issue of whether a "policy" of "failing to train" could support such a section 1983 action, *Tuttle* expressed skepticism:

> [E]ven assuming that such a "policy" would suffice, it is open to question whether a policymaker's "gross negligence" in establishing police training practices could establish a "policy" that constitutes a "moving force" behind subsequent unconstitutional conduct, or whether a more conscious decision on the part of the policymaker would be required.

*Tuttle,* 105 S.Ct. at 2436 n. 7.

Similarly, *Languirand,* held that "a municipality is not liable under section 1983 for ... failing to train the particular officer in question, in the absence of evidence of at least a pattern of similar incidents in which

citizens were injured or endangered ... or that serious incompetence or misbehavior was ... widespread throughout the police force." 717 F.2d at 228. After *Languirand,* the specificity required of complaints seeking relief under section 1983 demands more than the sweeping allegations that Holly Springs had "perpetuated a policy and procedure ... which policy was in violation of the United States Constitution Amendment Four" and other such conclusory allegations of "policy."

Nor can allegations that the defendants failed to instruct police personnel not to stop citizens without "probable cause" substitute for a pattern of injury: "The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a *constitutional* violation." *Tuttle,* — U.S. at —— n. 8, 105 S.Ct. at 2436 n. 8 (emphasis in original). And, once again, no other incident of "unconstitutional stops" is alleged. Therefore, the claims against those defendants whose liability may only be predicated on official custom and policy, in particular the City of Holly Springs, its chief of police, and the Chief of the Mississippi Highway Patrol, should be dismissed.

### III

The complaint fails to state a claim under either *Garner* or *Shillingford.* Jamieson's complaint is that the roadblock constituted unreasonable force or, alternatively, that the crash was "proximately caused" by the pre-chase stop.[1] The complaint is quite specific as to the nature of the chase:

> On or about July 25, 1982, at approximately 2:25 a.m. on Mississippi Highway 7, approximately 11.4 miles north of Holly Springs, Mississippi ... Jamieson was a guest passenger in a vehicle operated by ... Gammons. [The] police officers pulled their vehicles in behind the vehicle driven by ... Gammons ... [who] start-ed driving at a high rate of speed trying to get away from the ... [officers]. [The officers] knew that ... Gammons was a mental patient[2] and had behaved in this manner before.... [The officers] pursued ... Gammons at a high rate of speed causing ... Gammons to drive at a higher rate of speed, thus endangering the lives of the other passengers in the Gammons vehicle.

The complaint goes on to say that to stop Gammons from speeding on hilly, dark Highway 7, the police set up a roadblock and that "Gammons was unable to see the unlighted patrol car [i.e., the roadblock] as he drove his vehicle over the top of a hill."

We need only apply *Garner* to these facts *as alleged* to see they preclude liability: "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Garner,* — U.S. at ——, 105 S.Ct. at 1701 (emphasis added). Yet setting up a roadblock to stop a speeding car can scarcely be considered "deadly force."

To challenge the long-standing police practice of setting up roadblocks to stop speeding cars on the theory that the police should have known that a driver would have eventually slowed down, or that the roadblock should have been better lit, cannot be characterized as anything other than "litigation involving inappropriate second-guessing of police officers' split-second decisions." *Garner,* at ——, 105 S.Ct. at 1706. In recent fourth amendment cases, the Court has repeatedly stressed this point:

> A court ... should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing.... A creative judge engaged in *post hoc* evaluation of

---

1. At oral argument the plaintiffs' attorney stated, "Yes sir, they [the police] had the probable cause and the right to stop them [the speeding car] at that time, but they still had to use reasonable methods to do it."

2. No further mention is made of Gammons' mental condition; the complaint does not allege his mental problem was in any way serious.

police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished.

*United States v. Sharpe,* —— U.S. ——, 105 S.Ct. 1568, 1576, 84 L.Ed.2d 605 (1985) (quoted in *United States v. Montoya de Hernandez,* —— U.S. ——, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) (reversing circuit court for "second-guessing" law enforcement authorities)). The majority, however, does not even suggest an alternative to setting up a roadblock. Indeed, one respected commentator has written:

> It is not uncommon for the police to barricade a road with police cars ... in order to stop a person who has fled from the police at such a high rate of speed that it would be impossible or highly dangerous to try to overtake him. Their authority to do so is unquestioned; it "is inherent in the power and the duties of law enforcement officers if those duties are to be effectively discharged." Consequently, ... the practice is not constitutionally objectionable.

LaFave, *Search and Seizure,* Vol. 3 at 145 (omitting cites and footnotes).

If ever a case amounted to second-guessing the police, this, I respectfully suggest, is it.

### IV

The plaintiffs do not allege conduct "inspired by malice" and constituting an abuse of power that "shocks the conscience" as required by *Shillingford. Shillingford,* at 265. The complaint contains no allegation that might support "malice," or anything like malice. Accordingly, the majority's reasoning that the issue of "motive" needs to be developed at trial is unsupportable; there is no adequate allegation of motive to be developed. Nor is my conscience shocked by the allegations of the complaint. I, for one at least, am not surprised that police would use a roadblock to stop a speeding car on a hilly, dark, two-lane road in Marshall County, Mississippi, especially when, as the complaint itself alleges, a significant danger to life and property has been created by the speeding car.

### V

Therefore, because I am totally unconvinced that the district judge abused his discretion in denying leave to file the second amended complaint, and because I am convinced that further proceedings in this case will lead to a futile result for all parties, I respectfully dissent.