**UNITED STATES COURT OF APPEALS**

**for the Fifth Circuit**

_____

No. 96-40634
_____

LORENZO COLSTON,

Plaintiff-Appellee,

and

YOLANDA MICHELLE COLSTON,
Individually and as Next Friend of
Lauren Colston and Quinton Colston, Minor Children

Intervenors-Appellees,

VERSUS

BRYAN BARNHART, Texas Department of Public Safety Officer,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(6:94-CV-207)
_____
November 19, 1997

Before KING, DAVIS, and DeMOSS, Circuit Judges

DAVIS, Circuit Judge:[*]

Trooper Bryan Barnhart appeals the denial of his motion for
summary judgment based on qualified immunity.  Because Barnhart's
use of deadly force to defend himself and others from plaintiff
Lorenzo Colston was objectively reasonable, we conclude that the

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

district court erred in denying summary judgment on grounds of qualified immunity. Accordingly, we reverse and render.

I.

On September 29, 1993, at approximately 9:30 p.m., Texas State Policeman Bryan Barnhart was driving on a dark, isolated part of U.S. 175 in Henderson County, Texas. Around that time, Trooper Barnhart directed Marcus Fields to the shoulder of the road because Fields' automobile had a defective headlight. Appellee Colston was a passenger in Fields' car. Barnhart learned during a routine license check that Fields had an outstanding traffic warrant and placed him under arrest. Fields informed Barnhart that his wrists hurt because of recent surgery. As a result, Barnhart did not use handcuffs to secure Fields' arms behind his body; instead, he used a flex cuff to secure Fields' hands in front of his body. Barnhart decided that he would release Fields' car to Colston if he had a driver's license and could safely drive the vehicle. Barnhart asked Fields if Colston had a driver's license. Fields said that he did.

Barnhart then approached the passenger side of Fields' car and asked Colston to step out so he could see his driver's license. As he stepped out of the car, Colston told Barnhart that he did not have a license and that he did not drive. Colston was approximately 6'1" and weighed 225 pounds; Barnhart was about 5'6" and weighed 160 pounds.

2

Around the time that Barnhart began talking to Colston, Henderson County Deputy Sheriff Jim Langford arrived at the scene, but stood near Barnhart's patrol car and did not immediately approach Barnhart and Colston.

Barnhart proceeded to question Colston. He first asked Colston how old he was, and Colston replied that he was 18 years old.[1] Barnhart asked Colston if he had ever driven before; Colston stated that he had not. After retrieving his clipboard from his car, Barnhart asked Colston to spell his last name; Colston complied. Barnhart then asked Colston for his first name. Colston stated that it was "Sylvester," which he was unable to spell. After two failed attempts at spelling "Sylvester," Colston told Barnhart his name was Leo. Barnhart asked Colston what his name was three more times; Colston stated it was Leo. Barnhart then asked Colston what his middle name was, and he replied that he did not have one.

Barnhart walked over to Fields and asked him what Colston's name was; Fields answered that it was Leo. Barnhart asked Fields about the name Sylvester. Fields stated that he thought it was Colston's middle name.

Barnhart returned to Colston and again asked him what his middle name was. Colston again said that he did not have a middle name. Barnhart placed his clipboard on Field's car, and asked Colston whether he was carrying any weapons. Colston responded

---

[1]The record shows that Colston was 29 years old.

3

that he was not.[2]

Barnhart asked Colston to turn and face the other direction, Colston took two steps back but did not turn around.  Barnhart ordered Colston to get down on his knees; Colston turned and placed his hands above his head, but did not get on his knees.  Barnhart repeated the order.  As Colston went to his knees, Barnhart pulled his baton.  Once Colston was on his knees, Barnhart told Colston to remain still and cross his feet, and Colston complied.  Colston asked Barnhart, "why y'all treating me like this?"  Barnhart replied that it was because Colston would not tell him who he was.  Colston then informed Barnhart that his name was Lorenzo Colston and that he did have a driver's license in his wallet.  Colston then turned his head and looked at Barnhart.

Barnhart ordered Colston to look straight ahead and to get to the ground.  Colston got on all fours, but then lifted one leg up.[3] Langford, who had walked over to Barnhart's side moments earlier, also ordered Colston to get on the ground.  Colston told the officers he would not get on the ground and began to stand up.  Both officers pushed Colston in an attempt to prevent him from standing up.  As they were doing this, Barnhart and Langford repeatedly ordered Colston to get down.  Colston resisted their efforts and forced his way to his feet. Barnhart began striking

---

[2]Although Barnhart was unaware of their presence, a shotgun and a knife were later recovered from Fields' car.

[3]Colston states that he lifted his leg in preparation to run.

Colston with his baton, and Langford tried to grab Colston. Colston violently resisted and knocked Langford to the ground with a single hard blow. With Langford down, Barnhart struggled to control Colston; Colston struck Barnhart in the face and knocked him to the ground. The blow broke Barnhart's glasses and dazed him. Langford regained his feet and charged Colston. Colston knocked him to the ground next to Barnhart, leaving him limp and motionless.

From his prone position, Barnhart drew his gun. Barnhart aimed at Colston, who was standing between him and Langford, and fired a shot that missed. Colston turned, stepped over Barnhart's outstretched legs, and took about two steps away from Barnhart directly toward Barnhart's patrol car, where Barnhart's shotgun was located. At this moment Barnhart fired twice, hitting Colston in the back of his right arm and in his buttocks.

A video recorder mounted on Barnhart's patrol unit was operating from the time Barnhart stopped his vehicle. The incident described above was captured on videotape, which is part of the record.

Colston filed a 42 U.S.C. § 1983 action alleging, inter alia, that Barnhart violated his Fourth Amendment rights by using excessive force against him. Barnhart moved for summary judgment on the ground of qualified immunity. The district court denied Barnhart's motion for summary judgment after concluding that material issues of fact were presented which precluded summary

5

judgment.

II.

A.

We have jurisdiction to hear appeals from district court orders denying summary judgment on the basis of qualified immunity when the appeal is based on an issue of law. Cantu v. Rocha, 77 F.3d 795, 802 (5th Cir. 1996). The district court's determination that fact issues were presented that precluded summary judgment does not necessarily deny us jurisdiction over this appeal. Coleman v. HISD, 113 F.3d 528, 531 (5th Cir. 1997). We can determine as a matter of law whether Barnhart is entitled to qualified immunity after accepting all of Colston's factual allegations as true. See Cantu, 77 F.3d at 802-3. We therefore have interlocutory jurisdiction to determine the legal issue of whether Barnhart's conduct was objectively reasonable. Id. Mitchell v. Forsyth, 472 U.S. 511 (1985); Johnson v. Jones, -- U.S. --, 115 S.Ct. 2151 (1995); Beherens v. Pelletier, -- U.S. --, 116 S.Ct. 834 (1996); Nerren v. Livingston Police Dep't, 86 F.3d 469, 472 (5th Cir. 1996).

B.

We review de novo the district court's order denying summary judgment on grounds of qualified immunity. Nerren, 86 F.3d at 471.

Qualified immunity shields government officials performing discretionary functions from civil damage liability if their

6

actions were objectively reasonable in light of clearly established law. Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir.), cert. denied, 506 U.S. 973 (1992). The evaluation of a qualified immunity claim involves a two-step inquiry. Harper v. Harris County, 21 F.3d 597, 600 (5th Cir. 1994). The first step is to determine whether the plaintiff has alleged a violation of a clearly established constitutional right. Id. There is no dispute that Colston has met this burden; the use of excessive force to apprehend a subject implicates the Fourth Amendment's guarantee against unreasonable seizures. See Tennessee v. Garner, 471 U.S. 1 (1985); Graham v. Connor, 490 U.S. 386 (1989).

The second step requires the court to determine whether Barnhart's conduct was objectively reasonable under existing clearly established law. Harper, 21 F.3d at 600. In Graham v. Connor, 490 U.S. 386, 395 (1989), the Supreme Court explained that the reasonableness inquiry in an excessive force case is an objective one; evaluating the officer's conduct under the Fourth Amendment we must balance the amount of force used against the need for that force with reference to clearly established law at the time of the conduct in question. Id. at 396; see also Spann v. Rainey, 987 F.2d 1110, 1115 (5th Cir. 1993); Fraire, 957 F.2d at 1273.

The Supreme Court instructs that in determining the reasonableness of Barnhart's conduct, we are not to employ "the 20/20 vision of hindsight," Graham, 490 U.S. at 396, and that we

7

must consider "the fact that police officers are often forced to make split second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Id. at 396-7.

We turn now to the issue of whether it was objectively reasonable for Barnhart to use deadly force, given the totality of the circumstances confronting him. Barnhart argues that it was objectively reasonable, under Tennessee v. Garner, 471 U.S. 1 (1985), for him to use deadly force because a reasonable officer in his circumstances would have believed that Colston posed a threat of serious bodily harm or death to himself or Langford. Colston maintains that it was not objectively reasonable for Barnhart to believe that Colston posed a danger to either officer at the time Colston was shot because he was unarmed and attempting to flee.

At the time Barnhart fired his weapon at Colston, the video tape and the remaining summary judgment evidence establish the following: Colston had not answered all of Barnhart's questions honestly and he had disobeyed both Barnhart's and Langford's orders to get on the ground. Colston, who was much larger than Barnhart, had violently and forcefully resisted the officers' attempts to gain control of him. Colston quickly subdued both officers and knocked them to the ground with some force. Barnhart was dazed and his vision was blurred. Langford, who had a loaded weapon on him, was lying limp and motionless next to Barnhart. Colston was on his feet near the officer's outstretched legs. Barnhart's earlier

8

attempts to control Colston with non-deadly force, including hitting him with a baton, had failed. At the time Barnhart drew his weapon and fired the first shot, Colston was standing between Barnhart and Langford in a position to inflict serious harm on the officers with or without a weapon. When Barnhart fired the two shots that hit Colston, Colston had moved only two steps from Barnhart, toward Barnhart's patrol car, where his shotgun was located.

Although Colston asserts that he was attempting to flee, Barnhart had no way to know whether Colston intended to flee or inflict further injury or death on the officers. We cannot say that a reasonable officer in Barnhart's place would not have believed that Colston posed an immediate danger of serious bodily harm or death to Barnhart or Langford. As a result, Barnhart's decision to use deadly force was objectively reasonable.

Colston argues that Barnhart's failure to warn him before he discharged his weapon makes Barnhart's conduct objectively unreasonable. We disagree. In Tennessee v. Garner, the Supreme Court held that an officer who determines that deadly force is necessary to protect himself or others should give a warning if it is "feasible." Garner, 471 U.S. at 10. Barnhart, lying on his back with Colston nearby, had to immediately decide whether to shoot. In light of the totality of the circumstances facing Barnhart, Barnhart's failure to give a warning was not objectively unreasonable.

9

## III.

Because a reasonable officer in Barnhart's position could have believed that he and Langford were in imminent danger of serious bodily harm or death at the hand of Colston, Barnhart was objectively reasonable in shooting Colston. Accordingly, the district court's order denying Barnhart's motion for summary judgment on grounds of qualified immunity is reversed and judgment is rendered granting that motion.

REVERSED and RENDERED.


DeMOSS, Circuit Judge, dissenting:

Appellant Bryan Barnhart, who is white and a state policeman, twice shot Appellee Lorenzo Colston, who is black, in the back. At the time Barnhart's shots were fired, Colston was fleeing a scene where he had been unjustifiably beaten by Barnhart and Jim Langford, who is white and a deputy sheriff. Colston was not under arrest. Colston did not have a gun nor a knife nor a club nor any other weapon on his person. Neither Barnhart nor Langford was injured in the altercation which preceded Colston's flight, but Barnhart nevertheless fired two shots which seriously injured Colston and resulted in his permanent disability and disfigurement.

Notwithstanding these facts, Barnhart has asked this Court to reverse the district court's denial of his motion for summary judgment and adjudge him qualifiedly immune because his actions

10

were objectively reasonable as a matter of law.  Because this Court lacks appellate jurisdiction to decide Barnhart's appeal, and because I disagree with the majority's conclusion that Barnhart's shooting of Colston was objectively reasonable, I dissent.


## I.  Appellate Jurisdiction

The appeal from the district court's denial of summary judgment should be dismissed because this Court lacks appellate jurisdiction over Barnhart's appeal from that ruling.

Ordinarily, this Court has power only to review a "final decision."  28 U.S.C. § 1291.  A "collateral order" doctrine has developed to allow courts of appeals to consider interlocutory appeals in certain circumstances.  *See* **Cohen v. Beneficial Indus. Loan Corp.**, 337 U.S. 541 (1949).  "To come within the 'small class' of decisions excepted from the final-judgment rule by **Cohen**, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment."  **Coopers & Lybrand v. Livesay**, 437 U.S. 463, 468 (1978).

The denial of a substantial claim of qualified immunity may be appealable before final judgment.  *See* **Mitchell v. Forsyth**, 472 U.S. 511, 525 (1985).  The right to appeal from such a denial of summary judgment is not, however, absolute.  In **Johnson v. Jones**, 515 U.S. 304 (1995), the Supreme Court clarified its standard,

noting that

> a district court's order denying a defendant's motion for summary judgment [is] an immediately appealable "collateral order" (*i.e.*, a "final decision") under *Cohen*, where (1) the defendant was a public official asserting a defense of "qualified immunity," and (2) the issue appealed concern[s], not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of "clearly established" law.

*Johnson*, 515 U.S. at 311 (quoting *Mitchell*, 472 U.S. at 528).

*Johnson* involved a plaintiff's § 1983 claim arising from the alleged use of excessive force by police officers. Because the plaintiff, a diabetic, was having an insulin seizure at the time of his beating at the hands of the police, he was unable to specifically identify the officers who had beat him. Three officers who were named as defendants moved for summary judgment, pointing out that they were not identified as the perpetrators and that other officers could have committed the offense. The motion was denied; the officers appealed. *See id.* at 307-08. Affirming the Seventh Circuit's dismissal of the appeal, the Supreme Court concluded that there was a lack of appellate jurisdiction because there was no question of law at issue, but rather the appeal merely concerned a question of the "evidence sufficiency" of the officers' contention that "we didn't do it." *Id.* at 313, 316. The present case is controlled by *Johnson*.

First, the competing claims in this case resemble *Johnson* in light of the "I didn't do it" aspect of Barnhart's defense.

Colston claims that he was shot in the back as he escaped from the scene; in contrast, Barnhart claims that he fired his weapon in self-defense. The district court stated its grounds for denying Barnhart's motion for summary judgment in plain language: "The Court has reviewed the summary judgment evidence and is convinced that issues of material fact exist which preclude summary judgment in this case." Thus, just as in the case of the **Johnson** officers' "we didn't do it" defense, in this case "the District Court's determination that the summary judgment record in this case raised a genuine issue of fact . . . was not a 'final decision' within the meaning of the relevant statute." **Id.**; *see also* **Cantu v. Rocha**, 77 F.3d 795, 803 (5th Cir. 1996).

**Behrens v. Pelletier**, 116 S. Ct. 834 (1996), is not to the contrary. **Behrens** reaffirms the **Mitchell** holding: "an order denying qualified immunity, to the extent it turns on an 'issue of law,' is immediately appealable." **Behrens**, 116 S. Ct. at 841 (citation omitted); *see also* **Cantu**, 77 F.3d at 803. Moreover, the Court explicitly reiterated the **Johnson** holding, that:

> determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly "separable" from the plaintiff's claim, and hence there is no "final decision" under **Cohen** and **Mitchell**.

-13-

*Behrens*, 116 S. Ct. at 842 (citing *Johnson*, 515 U.S. at 312-15). *Behrens* therefore does not control this case, which is unappealable precisely because of the absence of an issue of law.

Furthermore, our Court lacks appellate jurisdiction even if the dispute is not characterized as a *Johnson*-style "I didn't do it" scenario. The state of the record was determined by the district court to be insufficiently developed to permit findings of fact upon which an evaluation of the objective reasonableness of Barnhart's actions could be based. In such a case, our Court lacks appellate jurisdiction over an appeal from denial of summary judgment. *See **Naylor v. Louisiana**, 123 F.3d 855, 857 (5th Cir. 1997); see also **Hart v. O'Brien**, No. 96-40151, slip op. 548, 584-87, 1997 WL 656282, at *152-*159 (5th Cir. Nov. 6, 1997) (Benavides, J., dissenting); **Tamez v. City of San Marcos**, 62 F.3d 123, 124-25 (5th Cir. 1995); **Harper v. Harris County**, 21 F.3d 597, 601 (5th Cir. 1994).

The district court in this case declared that an issue of material fact exists which undermines any determination at summary judgment of "whether Officer Barnhart had a reasonable belief of danger from the fleeing suspect which would justify the use of deadly force in self-defense." The court therefore concluded that summary judgment was inappropriate because both Barnhart's claim of qualified immunity and Colston's claim under 42 U.S.C. § 1983 hinge on a determination of the objective reasonableness of Barnhart's

-14-

actions. *See Graham v. Connor*, 490 U.S. 386, 394 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985). That decision was based on an evaluation of the facts in the case; this appeal thus contains no cognizable issue of law.

The majority attempts to establish appellate jurisdiction by assuming away the disputed issues of material fact found by the district court. Specifically, the majority purports to accept Colston's factual allegations as true. It then turns to the question of the objective reasonableness inquiry, which our Court has acknowledged to be a question of law that may be decided by a judge in the absence of any dispute over material facts. *See Cantu*, 77 F.3d at 802. But the majority then goes astray, drawing inferences in the wrong direction and viewing the record in the light most favorable to Barnhart.

In light of the district court's conclusion that the objective reasonableness of Barnhart's actions could not be determined at summary judgment because of the unsettled state of the record--a conclusion based solely on the district court's evaluation of "evidence sufficiency"--our Court has no appellate jurisdiction to review that judgment. *See Naylor*, 123 F.3d at 857; *see also Tamez*, 62 F.3d at 124-25*; Harper*, 21 F.3d at 601. The resolution of disputed material facts is not to be achieved by a judge through summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242*, 249-50 (1986). A dispute concerning material fact issues can

-15-

only be resolved through resort to the finder of fact--in this case, a jury.

This appeal does not present an issue separable from the merits of Barnhart's claim, as is required by *Coopers & Lybrand*, *Mitchell* and *Johnson*. The absence of an issue of law regarding Barnhart's qualified immunity claim that is separable from the ultimate merits of Colston's lawsuit removes this case from the collateral-order category of final decisions and deprives this Court of appellate jurisdiction. Furthermore, the issue of whether Barnhart used excessive force in this case can be reviewed by this Court upon appeal from a final judgment by the district court, and such later review will have the benefit of all of the evidence produced at trial and the jury's resulting findings of fact. In two respects, therefore--the absence of an issue separate from the merits and the ultimate reviewability of Barnhart's defense on appeal from final judgment--this case fails to pass the separability test of *Cohen*, *Coopers & Lybrand*, and *Mitchell* for interlocutory appeal.

## II. Summary Judgment

Assuming, arguendo, that appellate jurisdiction does exist with respect to Barnhart's appeal, the district court's denial of summary judgment should be affirmed.

The Fourth Amendment's protection against unreasonable

seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers who use excessive force against citizens. The relevant inquiry is one of objective reasonableness. *See* **Mitchell**, 490 U.S. at 397. The majority's conclusion that Barnhart's shooting of Colston was objectively reasonable is highly dubious.

As a threshold matter, I again note that the majority does not accept all of Colston's factual allegations as true, as it purports to do. Instead, the majority takes the opposite approach and allows numerous inferences in Barnhart's favor. For example, Colston frames his complaint in terms of excessive force used in preventing his attempted escape from abusive treatment. The majority, however, describes a scene in which Colston violently resisted the police, physically overpowered them, and then remained on the scene, standing ready to inflict serious injuries had Barnhart not resorted to using his firearm. The majority's treatment departs radically from the ordinary practice of indulging factual inferences on summary judgment in favor of the nonmovant.

In light of the majority's hostile view of Colston's charge, it is perhaps not surprising that they erroneously conclude that Barnhart's conduct was objectively reasonable. A number of factors lead me to the opposite conclusion.

First, it is significant that Colston's assault on the officers never involved the use of a weapon. Not only did Colston

-17-

never use a weapon against Barnhart and Langford, but he did not disarm them in any way. The ultimate balance of power was at all times in the officers' favor. Colston may have initially overcome the officers with his bare fists, but it is not too much to expect that police officers be prepared to subdue an unruly detainee without having to resort to the use of a firearm.

Second, the nature of the injuries inflicted by Colston does not suggest that a resort to deadly force was objectively reasonable. The record bears no indication that either Barnhart or Langford required medical attention after the incident. It is true that they were both knocked down, that they may have been temporarily dazed, and that Barnhart's glasses were broken. But the effects of Colston's backlash (against what a reasonable jury could find was unnecessary violence initiated by the officers) were not injuries of any serious or life-threatening magnitude.

Finally, because the officers never asserted their authority to arrest Colston, we should be hesitant to indulge in Barnhart's favor the law's recognition of factors which may support the reasonableness of using deadly force against a fleeing person. *See, e.g.,* **Garner**, 471 U.S. at 3 (officer called out "police, halt"); **Brothers v. Klevenhagen**, 28 F.3d 452 (5th Cir.) (individual escaping from custody during transport from one holding cell to another), *cert. denied*, 513 U.S. 1045 (1994); **Fraire v. City of Arlington**, 957 F.2d 1268 (5th Cir.) (officer yelled "Stop, police,"

-18-

or "Halt, police," several times), *cert. denied*, 506 U.S. 973 (1992); **Jamieson v. Shaw**, 772 F.2d 1205 (5th Cir. 1985) (high-speed car chase). Regardless, Barnhart's failure to give a warning, which he was obliged to give, if feasible, before the use of deadly force against Colston, *see* **Garner**, 471 U.S. at 11-12, cuts strongly against a finding on summary judgment that Barnhart's actions were objectively reasonable.

* * *

The district court's ruling that there are disputed facts material to determining the objective reasonableness of Barnhart's conduct should preclude appellate review of Colston's assertion of qualified immunity at this stage of the proceedings. Furthermore, assuming that we do have jurisdiction, the judgment of the district court should be affirmed because Colston has alleged a violation of his constitutional rights, and a jury's determination that Barnhart's conduct was not reasonable could be supported by the summary judgment record.

In deciding that Barnhart's conduct was objectively reasonable, the majority stretches the holding of **Tennessee v. Garner** far beyond that decision's progeny. It is notable that the core result of **Garner** was a restriction, not an expansion, of the use of deadly force by law enforcement officers. To the extent that language in **Garner** attempts to trace the boundaries of the constitutional use of deadly force by the police, it is very

-19-

difficult indeed to conclude that Barnhart's actions fall within the purview of *Garner*'s guidance.

To give this Court's stamp of approval to Barnhart's actions is to ignore the Supreme Court's poignantly relevant observation:

> It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.

*Garner*, 471 U.S. at 11.

I respectfully dissent.