700 F.2d 1217
 STATE OF CALIFORNIA, Plaintiff-Appellant,
v.
Vincent HARVIER, as Chairman of Quechan Tribal Council;
George Bryant, William Curran, Joseph Jackson, Anderson
Miguel, Jr., and Rebecca Ramirez, as members of Quechan
Tribal Council; Neil Hill, as Fish and Game Warden for
Quechan Tribe of Indians, et al., Defendants-Appellees.
 No. 80-5323.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 2, 1981.
Decided March 4, 1983.
 
 Roderick E. Walston, Deputy Atty. Gen., San Francisco, Cal., for plaintiff-appellant.
 Charles Scott, Jr., Eugene R. Madrigal, Calif. Indian Legal Serv., Escondido, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before NORRIS and REINHARDT, Circuit Judges, and HAUK,* District Judge.
 REINHARDT, Circuit Judge:
 
 
 1
 California brought this action under 28 U.S.C. Sec. 2201 (Supp.IV 1980) for a declaratory judgment against the chairman and certain members of the Quechan Tribal Council, and the fish and game warden for the Quechan Tribe of Indians. The state sought a declaration that it was empowered, under "federal Indian law," to apply and enforce its fish and game laws against non-Indians hunting and fishing on the Quechan reservation. California alleged that the tribal officials had threatened the state's game wardens and were denying them access to the reservation (Fort Yuma).
 
 
 2
 In a prior action, California sought the same declaratory relief against the Quechan tribe itself. We held that the doctrine of tribal immunity barred a suit against the tribe, although we strongly suggested in dictum that some type of legal action was still available to the state. California v. Quechan Tribe, 595 F.2d 1153, 1155 (9th Cir.1979). Following our decision, California filed a suit against the tribal officials in their official capacities. The district court granted the defendants' motion to dismiss California's complaint but did not expressly dismiss its action. We hold that we lack jurisdiction to hear the state's appeal from the district court's order.
 
 
 3
 On our own motion, we consider whether the order dismissing the complaint is an appealable order. Ordinarily, an order dismissing a complaint but not the underlying action is not a final order and is, therefore, not appealable under 28 U.S.C. Sec. 1291 (1976). Scanlon v. Atascadero State Hospital, 677 F.2d 1271, 1272 (9th Cir.1982); Sherman v. American Federation of Musicians, 588 F.2d 1313, 1315 (10th Cir.1978); Marshall v. Sawyer, 301 F.2d 639, 643 (9th Cir.1962). We may regard such an order as final and appealable only if the record shows "special circumstances," Firchau v. Diamond National Corp., 345 F.2d 269, 270-71 (9th Cir.1965), such that it is "clear" that the court below found that "the action could not be saved by any amendment of the complaint which the plaintiff could reasonably be expected to make...." Marshall, 301 F.2d at 643 (citations omitted). See generally 9 J. Moore, Moore's Federal Practice p 110.13 (2d ed. 1982). Here it is far from clear that the district judge found that California's action could not be saved by any amendment of the complaint.
 
 
 4
 In its order granting defendants' motion to dismiss, the district court said:
 
 
 5
 Lower court cases on point have drawn a distinction between suits against tribal members in their individual capacities, which may be maintained, and suits against them in their representative capacities, which may not be maintained.
 
 
 6
 The present claim is clearly brought against the defendants in their representative capacities.... In fact, plaintiff's counsel admitted during argument that this suit is brought against the defendants in their capacity as members of the Tribal Council.
 
 
 7
 It is not at all clear from the district court's remarks that it found that the plaintiff's action could not be saved by any amendment of the complaint which California could reasonably be expected to make. Specifically, the court did not advise the parties how it would rule if the state amended its complaint to allege a cause of action under Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
 
 
 8
 In its order, the court relied on the distinction between suits against tribal members in their individual capacities, and suits against tribal officers acting within their representative capacities. It read the complaint as pleading only the latter type of suit and read California v. Quechan Tribe, 595 F.2d 1153 (9th Cir.1979) as barring such suits. The district judge did not rule, however, that tribal immunity precluded the state from amending its complaint to allege that the tribal officials had exceeded the scope of their authority or were otherwise subject to suit in their individual capacities.
 
 
 9
 California's complaint names the defendants "as members of Quechan Tribal Council" in its caption. In the body, the complaint states that "[d]efendants are officers of the Quechan Tribe of Indians and are sued in their capacity as such." In describing the nature of the alleged controversy, California states that defendants acted "in their capacity as officers of the Quechan Indian tribe." California did not name the defendants in their individual capacities or contend that the defendants were acting ultra vires or unconstitutionally. It did not allege that any unlawful conduct was taken by defendants in their individual capacities. Nor did it adequately make such an argument in its papers opposing defendants' motion to dismiss. To the contrary, by its complaint and in its argument on the motion to dismiss, the state focused the district court's attention on whether the tribal immunity rule is applicable to tribal officials acting in their official capacities, as well as to the tribe itself.
 
 
 10
 Defendants noted in their reply memorandum that plaintiff's complaint did not contain allegations necessary to invoke Ex parte Young but instead was based on the state's contention that tribal immunity does not bar suits against officials of Indian tribes. At oral argument defendants again stressed the Ex parte Young issue, and expressly acknowledged that under appropriate circumstances tribal officials may be stripped of their immunity and sued as individuals.
 
 
 11
 We have carefully studied the remarks of counsel and the district court at the hearing on the motion to dismiss. Almost all the remarks of the participants in the dialogue are, when read in context, ambiguous to some extent. However, we note that early in the oral argument, counsel for the state emphasized the state's fundamental point, saying, "And to my knowledge the Supreme Court has never held that the sovereign immunity doctrine extends to tribal officials." Then, toward the end of the oral argument, counsel for the state advised the court, "Well, I would just say, briefly, your Honor, that it's correct, we are suing the tribal officials in this case in their capacity as tribal officers."
 
 
 12
 It is clear that counsel did not adequately raise or present the issue whether jurisdiction could properly have been pleaded by suing the tribal officers in their individual capacities on an Ex parte Young theory. It is not possible to determine with any certainty how the district judge would have ruled had a complaint been before him containing such allegations. The judge's order did not preclude appellant from filing an amended complaint of that nature, and we do not believe the ambiguous colloquy can fairly be construed as "clearly" demonstrating that the district court determined that no possible amendment could save the complaint. Thus we do not find the requisite "special circumstances" present here, and we decline to treat an order dismissing the complaint as a final order for purposes of 28 U.S.C. Sec. 1291.
 
 
 13
 This case well illustrates the sound policy reasons underlying the final order rule we apply here. Our dissenting colleague urges us to decide important and complex issues of law regarding the sovereign immunity of Indian officials for actions taken pursuant to the valid constitution, bylaws and ordinances of the Indian nation. See generally California v. Quechan Tribe, 595 F.2d at 1154; Quechan Tribe v. Rowe, 531 F.2d 408, 408-10 (9th Cir.1976). Yet the record before us is wholly inadequate for that purpose. In this respect, we need only note that the principal arguments and theories relied on in the dissenting opinion were never presented to or considered by the district court.
 
 
 14
 There can be no doubt that the final order rule is more than a mere formality. The rule embodies the substantive policy that legal issues should be developed initially before the district courts. The State's failure to amend its complaint when it reasonably could have been expected to do so deprived the district court of the opportunity to fully explore the sovereign immunity questions raised by the dissent. Our decision that we have no jurisdiction is simply a reaffirmation of the important substantive policy that we have long recognized. See, e.g., Quechan Tribe v. Rowe, 531 F.2d at 412 (Wallace, J., concurring) (when a legal question "has serious consequences and is an issue upon which there is a diversity of opinions ... [t]he developmental process before the district court would provide us with a better foundation upon which to make our decision."); Westinghouse Electric Corp. v. Weigel, 426 F.2d 1356 (9th Cir.1970).
 
 
 15
 The dissenting opinion, although it sets forth a number of novel and interesting concepts, is largely irrelevant to the narrow question of law decided here. The entire thrust of our holding is that no final order has been issued by the district court. Although the specific complaint was dismissed, plaintiff's underlying cause of action remains before the lower court. See supra, at 962, at 1218. Consequently, the State of California could have amended its complaint to allege another potentially permissible basis for jurisdiction. Specifically, the State could have amended its complaint after the order of dismissal and placed the Ex parte Young question squarely before the district judge. Because California failed to do so, the order dismissing the complaint is not a final order and thus is not appealable. As a result, it is simply not necessary to reach the issues discussed in the dissent.[1]
 
 
 16
 The appeal is dismissed for lack of jurisdiction.
 
 NORRIS, Circuit Judge, dissenting:
 
 17
 * I respectfully dissent.
 
 
 18
 I understand the majority's position to be that the district judge's order dismissing the state's complaint is not appealable because it is not clear that "the action could not be saved by any amendment of the complaint which the plaintiff could reasonably be expected to make ...." Marshall v. Sawyer, 301 F.2d 639, 643 (9th Cir.1962). Particularly, the majority distinguishes between suits "against tribal members in their individual capacities, and suits against tribal officers acting within their representative capacities" and suggests that California should have amended its complaint to allege "that the tribal officials had exceeded the scope of their tribal authority or were otherwise subject to suit in their individual apacities." (Emphasis added). Had it done so, the majority suggests, it would have raised allegations sufficient to invoke the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and thus given the district judge an opportunity to rule on whether tribal sovereign immunity barred the state's action against the tribal officials.
 
 
 19
 I agree that California did not allege that the tribal officers had exceeded the scope of their tribal authority. I agree, moreover, that had the state done so it would have invoked the doctrine of Ex parte Young. Yet where the majority errs, and where I disagree, is in its suggestion that suing the tribal officials for acting ultra vires is the only way to invoke the doctrine of that case. There are two theories that invoke the doctrine of Ex parte Young. See Washington v. Udall, 417 F.2d 1310, 1314 (9th Cir.1969) One, certainly, is that government officials acted beyond the scope of their statutory authority. United States v. Raines, 362 U.S. 17, 25-26, 80 S.Ct. 519, 524-525, 4 L.Ed.2d 524 (1960); Home Tel. & Tel. Co. v. City of Los Angeles, 227 U.S. 278, 287-89, 33 S.Ct. 312, 314-315, 57 L.Ed. 510 (1913). This theory the majority recognizes. The other theory consists of an allegation that the government officers, though not acting ultra vires, were "carrying out official duties in violation of the Constitution." Washoe Tribe of Nevada & California v. Greenley, 674 F.2d 816, 818 (9th Cir.1982). See also Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689-90, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1949); Ex parte Young, 209 U.S. at 149-60, 28 S.Ct. at 449-454. It is this theory the majority completely ignores and on which California rests its complaint.[1]
 
 
 20
 California averred in its complaint a right to enter the reservation and apply its laws to non-Indians there present under "general principles of federal Indian law, upon the provisions of Public law 280, 18 U.S.C. Sec. 1162, 28 U.S.C. Sec. 1360, upon the provisions of the California Fish and Game Code, and upon other pertinent laws." It alleged that "defendants maintain that non-Indians who wish to fish or hunt while on [the] reservation need only comply with pertinent rules and regulations adopted by [the] tribe." Specifically, California contended that "defendants, in their capacity as officers of the Quechan Indian tribe, maintain that said tribe has exclusive jurisdiction to regulate the taking of fish and game by non-Indians while on the Fort Yuma Reservation, ... [that] [d]efendants ... claim that agents of the state of California cannot enter upon the Fort Yuma Reservation for the purpose of regulating fishing and hunting by non-Indians while on said reservation [and that they] ... have refused to allow, and have prohibited, authorized agents of the State of California to enter upon the Fort Yuma Reservation for the purpose of enforcing State ... laws...." Furthermore, the state claimed, "[d]efendants have ... threatened to arrest any authorized agent of the State of California who enters upon said reservation for the purpose of enforcing State fish and game laws against non-Indians." Finally, the state asked the district court to issue "a decree declaring that the State of California is authorized under federal law to apply its laws regulating the taking of fish and game to non-Indians while on the Fort Yuma Reservation, and that agents of the State of California are authorized under federal law to enter upon said reservation for the purpose of enforcing State fish and game laws against non-Indians." There was thus in the complaint the allegations necessary to inform all who read it that the state sought a declaratory judgment that its theory of federal law was correct and that the tribal officials could not forbid state officers from entering the reservation without violating federal law.
 
 
 21
 That is certainly enough to invoke what I have called the second branch of Ex parte Young. The state seeks a declaration that the tribal ordinance, which provided that non-Indians could hunt and fish on the Reservation with a permit from the tribe but without a California license, is in conflict with federal law, including federal statutes, and an injunction forbidding tribal officials from applying that ordinance to state officers. If its theory of law is correct, the ordinance may offend the Supremacy Clause and actions taken under color of that ordinance would thus be carried out in violation of the Constitution.[2] Since forbidding state officials from entering the reservation to enforce state laws is an act taken under color of that ordinance, the state clearly seeks to enjoin the "officers [from] carrying out official duties in violation of the Constitution," Washoe Tribe of Nevada & California v. Greenley, at 818. It is clear that California's complaint cannot be "saved by any amendment ... which the [state] ... could reasonably be expected to make," Scott v. Eversole Mortuary, 522 F.2d 1110, 1112 (9th Cir.1975); Marshall v. Sawyer, 301 F.2d at 643, for to amend the complaint to sue the officers as individuals, as the majority and district court demand, would change the gravamen of the state's entire claim. The state has complained of acts under color of an ordinance it alleges is constitutionally void. It has not complained of any ultra vires act. It is pointless, and certainly not "reasonable," to suggest that to appeal the district court's decision it must do so now.
 
 
 22
 I would thus hold the order appealable and would rule that the doctrine of Ex parte Young should be applied to suits against officers of Indian Tribes.
 
 II
 
 23
 * The doctrine of Ex parte Young was born out of practical necessity. It represents an accomodation of the principle of state sovereign immunity, as embodied in the Eleventh Amendment, and the principle that, to preserve meaningful supremacy of federal law, there must be a federal forum for the vindication of federal rights. J. Novak, R. Rotunda, J. Young, Constitutional Law 52 (1978) ("[T]he Eleventh Amendment was never intended nor held to grant the states the ability to subvert the supremacy clause by immunity from judicial orders to comply with federal law.") See also Novak, The Scope of Congressional Power to Create Causes of Action Against State Governments and the History of the Eleventh Amendment, 75 Col.L.Rev. 1413, 1445-46, 1455-58 (1975). The rule of Ex parte Young is compatible with the Eleventh Amendment because it permits suits for prospective and injunctive relief only--suits that generally place only an ancillary burden on state treasuries. See Edelman v. Jordan, 415 U.S. 651, 663-68, 94 S.Ct. 1347, 1355-1358, 39 L.Ed.2d 662 (1974). Whether or not individual state officers are the nominal defendants, the Eleventh Amendment remains as a bar to suit for money judgments that would be paid from state treasuries. Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); Edelman v. Jordan, 415 U.S. at 666-69, 94 S.Ct. at 1357-1358.
 
 
 24
 The Supreme Court has extended the doctrine of Ex parte Young to embrace suits against federal, as well as state, officials. Larson v. Domestic & Foreign Corp., 337 U.S. 682, 689-90, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1949). It appears to have sanctioned the extension of that doctrine to Indian Tribes as well.
 
 
 25
 In Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), plaintiffs brought an action for declaratory and injunctive relief against the Pueblo Tribe and its Governor, asserting that defendants were violating Title I of the Indian Civil Rights Act of 1968 (ICRA), 25 U.S.C. Secs. 1301-03. Id. at 51, 98 S.Ct. at 1673. Although the Court did not elaborate, it stated that "[a]s an officer of the Pueblo, [the Governor] is not protected by the tribe's immunity from suit ... cf. Ex parte Young, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908)." Id. at 59, 98 S.Ct. at 1677.[3] The suit against the Governor would clearly have bound the Pueblo tribe. The Court's suggestion that tribal immunity did not bar the suit against the Governor, along with its reference to Ex parte Young, indicates a willingness to apply the Ex parte Young fiction to tribal officers who violate federal law. See also United States v. Oregon, 657 F.2d 1009, 1012 n. 8 (9th Cir.1981) (tribal immunity extends to tribal officials acting in their official capacity and within the scope of their authority) (emphasis added).
 
 
 26
 Although I am hesitant to construe Martinez as a clear holding that Ex parte Young applies to Indian tribes, I am persuaded that both public policy and the jurisprudence of sovereign immunity compel that result.
 
 B
 
 27
 Indian tribes no longer enjoy the status of independent sovereign nations. Through the exercise of the sovereign power of the United States, their status has been reduced to that of "domestic dependent nations." Cherokee Nation v. Georgia, 30 U.S. (5 Pet.) 1, 17, 8 L.Ed. 25 (1831). Although they continue to enjoy attributes of sovereignty, their sovereign powers are now subject to the will of Congress, which has plenary authority to limit, modify, or eliminate the sovereign powers of the tribes. Santa Clara Pueblo v. Martinez, 436 U.S. at 56, 98 S.Ct. at 1675 (1978). See generally Note, In Defense of Tribal Sovereign Immunity, 75 Harv.L.Rev. 1058 (1982).
 
 
 28
 Although tribal immunity is not constitutionally protected, courts have long recognized that Indian tribes possess "the common law immunity from suit traditionally enjoyed by sovereign powers." Martinez, 436 U.S. at 58, 98 S.Ct. at 1677. I am not persuaded that subjecting Indian tribes to federal court actions for prospective relief under Ex parte Young will unduly interfere with the sovereign powers of Indian tribes. Nor am I persuaded that tribal officers may, without a grant of authority from Congress, interfere with the enforcement of valid state laws, and then claim that the Tribe's sovereign immunity bars the state from suing for injunctive relief in federal court. Just as the sovereignty of a tribe must fall before the will of Congress, so too a tribe's immunity must yield when the state[4] brings suit to enforce prospectively the will of Congress.
 
 
 29
 The courts have recognized that tribal sovereign immunity protects Indian resources against the dissipation that would otherwise be caused by judgments against the tribes. See Adams v. Murphy, 165 F. 304, 308-09 (8th Cir.1908). Suits for prospective relief under Ex parte Young will, however, have only ancillary effects on tribal resources, and should not unduly jeopardize the tribal treasury. Cf. Edelman v. Jordan, 415 U.S. at 667-68, 94 S.Ct. at 1357-1358. ("[A]n ancillary effect on the state treasury is a permissible and often inevitable consequence of the principle announced in Ex parte Young.")
 
 
 30
 Appellees argue that the doctrine of Ex parte Young should not be applied "wholesale" to Indian tribes and their officers. They point out that the governmental structure of Indian tribes is often quite different from the structure of state or federal governments, and that the source and scope of a tribal officer's authority may often be impossible to ascertain with accuracy. Thus, they contend, federal courts should not presume to determine whether a tribal officer has acted beyond the scope of his tribal "statutory" authority. Brief of Appellees, 28-33. That issue, however, is not before us, as California alleges only that the Tribe's officers, acting under the authority of the Tribal ordinance, are violating California's rights under federal law.
 
 
 31
 In light of the foregoing analysis, I would conclude that tribal sovereign immunity does not bar a suit for prospective relief against tribal officers alleged to be acting in violation of federal law.
 
 III
 
 32
 Further delay in reaching the merits of the state's claim is not the only cost of failing to decide this appeal, for even if the distinction between suit of an individual instead of a representative was meaningful in this context, the majority disregards the fact that we function in the federal courts under a system of so-called "notice pleading." Federal Rule of Civil Procedure 8(a) provides that the complaint, to survive, must contain only "a short and plain statement of the grounds on which the court's jurisdiction depends ... a short and plain statement of the claim showing that the pleader is entitled to relief and ... a demand for judgment for the relief to which he deems himself entitled...." Fed.R.Civ.P. 8(a). We no longer live under a system "better calculated to vindicate scientific rules of pleading than ... dispense justice." 5 C. Wright & A. Miller, Federal Practice & Procedure Sec. 1202 at 61 (1969). Yet this is the regime to which the majority's approach hearkens a return. By insisting on niceties in the denomination of the parties when it is quite clear to all what California alleges and asks for in its complaint the majority places pleading technique above its responsibility to decide important questions of federal law. That is what the change from common-law pleading and the Codes was intended to avoid.
 
 IV
 
 33
 California is entitled to a determination whether the doctrine of Ex parte Young applies to Indian tribes. While the state is not, at this stage of the proceedings, entitled to a ruling on the merits of its claim, it should be told, without several years further delay, whether it can bring its claim at all. I would thus hold the order appealable and would rule that the doctrine of Ex parte Young should be applied to suits against officials of Indian Tribes acting under color of law in the same manner it is applied to suits against state and federal officials.[5]
 
 
 34
 The majority undermines both the system of notice pleading in the federal courts and the spirit of Ex parte Young. I believe it errs in so doing.
 
 
 
 *
 Honorable A. Andrew Hauk, Chief Judge, United States District Court for the Central District of California, sitting by designation
 
 
 [1]
 Even though we need not resolve the issues raised in the dissent, it is important to note that none of the arguments relied on was ever presented to the district court by the State of California. Rather than proceeding on an Ex parte Young theory, California repeatedly emphasized that the defendants were being sued in their official capacities. See supra at 963, at 1219. In its brief to this court, the State candidly admits that
 [s]ince the effect of our action would restrain the Tribe from acting to prevent California fish and game officials from entering the reservation to enforce California laws against non-Indians, our action must ... be considered as an action against the Tribe rather than against tribal members acting in their individual capacity.
 In dismissing California's complaint, the district judge did not foreclose the possibility that the complaint could be amended to state a cause of action against the Indians in their individual capacities under an Ex parte Young theory. See, e.g., United States v. State of Oregon, 657 F.2d 1009, 1012 n. 8 (9th Cir.1981); Bottomly v. Passamaquoddy Tribe, 599 F.2d 1061, 1062 (1st Cir.1979). California failed to make such an amendment.
 Moreover, the State of California never argued before the district court that any constitutional violations had been committed by the Indians acting in their official capacities. Even the State's brief on appeal implicitly disclaims any sort of constitutional argument. Rather, the State relied entirely on the theory that the Indians, acting in their official capacities, had violated "general principles of federal Indian law." Although we do not resolve the issue here, we have serious doubt as to whether highly ambiguous allegations that "general federal law" has been violated are sufficient to strip the shield of sovereign immunity from Indian officers acting in their official capacities. See, e.g., Butz v. Economou, 438 U.S. 478, 520, 98 S.Ct. 2894, 2917, 57 L.Ed.2d 895 (1978) (Rehnquist, J., concurring in part and dissenting in part); Larson v. Domestic & Foreign Corp., 337 U.S. 682, 701, 69 S.Ct. 1457, 1467, 93 L.Ed. 1628 (1948). See also 14 Wright, Miller & Cooper, Federal Practice & Procedure Sec. 3655 at 184 (1969) ("plaintiff specifically must allege the statutory limitation on which he or she relied ...; conclusory allegations about 'illegal' or 'unauthorized' acts are not enough.").
 Perhaps in response to the inherent weaknesses in California's complaint, the dissent argues that the provisions of 18 U.S.C. Sec. 1162 and 28 U.S.C. Sec. 1360 may also have been violated. See infra at 967, at 1217-1218. While there is a brief mention of the two statutes in its complaint, the State of California never attempted to explain how the Indians violated those provisions. Indeed, the statutes were not even discussed by the State in its memorandum or during oral argument before the district court. Moreover, the two statutes are procedural in nature, and it is questionable whether they can be read as congressional withdrawals of the Indians' sovereign immunity in this sort of case. See, e.g., Quechan Tribe of Indians v. Rowe, 350 F.Supp. 106, 109 (S.D.Cal.1972) and cases cited therein, aff'd, 531 F.2d 408 (9th Cir.1976). Nevertheless, the dissent argues, without citing any authority, that the Supremacy Clause of the United States Constitution is violated when officers of an Indian tribe violate state law after the state has been authorized to apply its law by federal statute. This novel Supremacy Clause theory may or may not have merit, but it was never suggested by the State and was not considered by the district court. In view of California's failure to amend its complaint, we need not speculate how courts would rule on such a Supremacy Clause argument if one were ever properly raised.
 
 
 [1]
 The concept of suits against persons in their "individual" instead of "representative" capacity appears to be a source of much confusion in this case. The majority does not distinguish between the two, and the district court merely stated conclusorily that "[l]ower court cases on point have drawn a distinction between suits against tribal members in their individual capacities, which may be maintained, and suits against them in their representative capacities, which may not be maintained." [E.R. 2]
 This confusion, I think, derives from the fact that there are two types of suits against individuals, one invoking the doctrine of Ex parte Young and the other having nothing to do with that case at all. These two types of suits were discussed by the Supreme Court in Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). There the court noted that
 "If the officer purports to act as an individual and not as an official, a suit directed against that action is not a suit against the sovereign. [For example], [i]f the War Assets Administrator had completed a sale of his personal home, he presumably could be enjoined from later conveying it to a third person. On a similar theory, where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in way which the sovereign has forbidden."
 Id. at 689, 69 S.Ct. at 1461.
 While the Court in Larson seems to have believed that the two suits are founded "on a similar theory," they clearly are not. The suit to enjoin the sale of the house has nothing whatsoever to do with the sovereign. It is simply a suit against an individual who happens to work for the sovereign. The suit has no more to do with the government than a suit against a business executive arising out of a vacation traffic accident has to do with the company which employs him.
 The suit against a government official for exceeding his statutory powers, however, stands on quite a different footing, for such a suit directly invokes the doctrine of Ex parte Young. In that suit the claim is that while acting under color of law the official went beyond his statutorily delegated power. Such a suit invokes the doctrine of Ex parte Young in that it is designed to enjoin an officer who, because he is acting beyond the scope of his authority, is acting in violation of federal law.
 The difference between the two cases is that in the case of the suit against the government official, the official, though acting ultra vires, is acting under color of law. This is a theme common to all cases brought under the theories of Ex parte Young. For analytical purposes, therefore, I prefer to think of Ex parte Young as consisting of two branches. The first consists of suits alleging that as a result of an act, a government officer is acting in violation of federal law. The second consists of suits alleging that the officer, though not acting ultra vires, is acting under a statute or ordinance which is either preempted by federal law or directly violates the Constitution. Each branch, then, involves an allegation that an officer of the government, acting under color of law, violated federal law.
 Civil suits against individuals, on the other hand, I prefer to think of as those in tort or contract, unrelated to the conduct of the individual as an officer of the state and regarding acts not taken under color of law. These suits, obviously, have nothing to do with the doctrine of Ex parte Young.
 When analyzed in this fashion this case becomes clear. California does not complain of any individual act. No one has tried to sell the state a house he does not own. Instead, California complains under what I have called the second branch of Ex parte Young. It complains that tribal officers, acting under an ordinance of the Tribe, are violating federal law in refusing state officers access to the Fort Yuma Reservation to enforce state fish and game laws. Whether such a complaint can be brought without running afoul of the doctrine of sovereign immunity is the question I believe we should be addressing today. See infra, Part II.
 
 
 [2]
 I do not argue, as the majority suggests, that the Supremacy Clause is necessarily violated when officers of an Indian tribe violate state law when the state has been authorized by federal law to apply its statute. All we are required to decide at this stage of the litigation is that California has made a colorable claim that such is the case in these circumstances. Once it has done so, I see no jurisprudential consideration that would require us to consider first whether acts under color of the tribal ordinance offend federal law, and thus the Supremacy Clause and then, only upon a finding of constitutional violation, to consider whether Ex parte Young applies to officers of Indian tribes
 
 
 [3]
 The Court in Martinez dismissed the claims against the Governor, holding that Congress had not intended to grant tribal members a federal cause of action under ICRA, except as provided in the statute. 436 U.S. at 72, 98 S.Ct. at 1681. Appellees read Martinez as holding that any suit that would bind a tribe through its tribal officers must fail for lack of a federal cause of action. I would disagree. Whether a suit may be maintained in the face of sovereign immunity and whether a particular federal statute gives rise to a cause of action are separate questions
 
 
 [4]
 I do not reach the question whether tribal members may bring federal court actions for prospective relief against tribal officers. Cf. Martinez, 436 U.S. at 65-72, 98 S.Ct. at 1680-1681 (discussing limited role of federal courts as forum for resolving disputes between tribes and their members)
 
 
 [5]
 The majority suggests that its decision upholds the integrity of the final judgment rule and, by so doing, ensures better decisions in this court by insisting on the full development of legal issues before the district court prior to our review. I fear the majority ensures only integrity of form and does so at the expense of timely justice
 The majority has seriously confused the final judgment rule with the rule governing appellate review of legal issues not raised before the trial court. As I have pointed out, because it would have been wholly futile for the state to amend its complaint as the majority suggests, the requirements of the final judgment rule have been fully complied with. That rule is thus irrelevant in this case.
 If, however, the question the majority is really raising is whether it is appropriate for us to reach the Ex parte Young issue when it was not argued as fully as the majority would have liked before the district court, I believe it errs in its conclusion on that point as well. It is clear to me that the state has raised allegations sufficient to invoke the doctrine of Ex parte Young. That it did not argue the doctrine below as well as the majority would have liked in no sense precludes our consideration of whether Ex parte Young applies in this case. Our job is not to remand with instructions to improve the quality of advocacy. The majority cites Judge Wallace's concurring opinion in Quechan Tribe v. Rowe, 531 F.2d 408, 412 (Wallace, J., concurring) for the proposition that the full development of legal issues before the district court would "provide us with a better foundation upon which to make our decision." The majority fails, however, to note that Judge Wallace was reluctant to decide the issue not raised at all before the district court in that case only because there exist[ed] an alternative ground ... to sustain the judgment of the district court [therefore] there [would] be no miscarriage of justice" by refusing to decide the particular issue. Here, however, such is not the case. As the Supreme Court noted in Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941).
 Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which all courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.
 This case has been going on now, without so much as a hint of adjudication on the merits, for over seven years. The majority dismisses the appeal in the hope of achieving compliance with technical niceties and improvement of the advocacy below. If such a delay to achieve such goals is not a "sacrifice of the rules of fundamental justice," 312 U.S. at 557, 61 S.Ct. at 721, I do not know what is.