Georgia BROWER, individually and as administrator of the Estate of William James Caldwell (Brower); William James Caldwell (Brower): Decedent, Scott Daniel King, a minor, Renee King, individually and as Guardian ad litem for Scott Daniel King, Plaintiffs-Appellants,

v.

COUNTY OF INYO, Inyo County Sheriff's Department, Donald Dorsey, Craig Oyster, Reginal Sides, James M. Holmgren, Missouri Nebraska Express and Tractor Lease, Inc., Defendants-Appellees.

No. 85–2857.

United States Court of Appeals, Ninth Circuit.

Argued Dec. 10, 1986.

Submitted Dec. 29, 1986.

Decided May 15, 1987.

As Amended June 26, 1987.

Robert G. Gilmore, Fresno, Cal., and Craig A. Diamond, Grass Valley, Cal., for plaintiffs-appellants.

David H. Bent, Fresno, Cal., for defendants-appellees, James N. Holmgren, Missouri Nebraska Exp. and Tractor Lease, Inc.

Dennis L. Myers, Independence, Cal., for defendants-appellees Inyo County, Inyo County Sheriff's Dept., Donald Dorsey, Craig Oyster and Reginal Sides.

Before CHOY, GOODWIN and PREGERSON, Circuit Judges.

GOODWIN, Circuit Judge:

William James Caldwell (Brower) died in a collision between an automobile he was driving and a truck employed as a roadblock by the Inyo County police. Brower's mother, as representative of Brower's estate, brought an action pursuant to 42 U.S.C. § 1983 alleging violations of Brower's constitutional rights. The mother and other family members also asserted liability under state law for negligence and wrongful death. The district court dismissed the nongovernmental defendants from the action and then dismissed the complaints against the governmental defendants, effectively dismissing the action. Plaintiffs appeal.

At approximately 11:30 p.m., on October 23, 1984, the decedent was driving southbound on Highway 395 pursued by an Inyo County Deputy Sheriff, Craig Oyster. Deputy Oyster believed Brower to be in possession of a stolen automobile; a felony under the law of the State of California. The pursuit continued at high speeds over a total distance of approximately twenty miles. At some point during the pursuit, Oyster radioed ahead to establish a roadblock.

The roadblock was set up by Deputy Reginal Sides with the assistance of a truck driver, James M. Holmgren, employed by Missouri-Nebraska Express. Holmgren was directed to place the tractor-trailer within his control across the highway to block both lanes of the two-lane highway. Sides then parked his own police vehicle 200 feet ahead of the tractor-trailer between it and the approaching Brower. He directed the headlights of his vehicle toward the approach path of Brower. Some time later, Brower drove past the side of Sides' police vehicle at a high rate of speed and slammed into the tractor-trailer rig. Brower died shortly after impact. This litigation followed.

As a preliminary matter, we must determine whether we have subject matter jurisdiction.

■ We have jurisdiction over appeals from "final decisions" of the district courts. 28 U.S.C. § 1291. In an action involving multiple defendants, the dismissal of the complaint only, without dismissal of the action, is not a final judgment. Therefore, ordinarily, an order dismissing a complaint but not the underlying action, will not support jurisdiction under 28 U.S.C. § 1291.[1] *California v. Harvier*, 700 F.2d 1217, 1218 (9th Cir.), *cert. denied*, 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983); *Scanlon v. Atascadero State Hospital*, 677 F.2d 1271, 1272 (9th Cir.1982).

It is clearly the better practice to obtain a final judgment before commencing an appeal in the courts of appeals.[2] However,

---

1. 28 U.S.C. § 1291 (1982) provides:

   The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States....

2. Parties faced with an order dismissing the complaint but not the underlying action may ordinarily amend their complaint. Fed.R.Civ.P. 15(a); *Scanlon,* 677 F.2d at 1272. Similarly, parties in actions involving multiple claims or multiple parties are entitled, up to the time of entry of a final judgment, to seek revision of "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed.R.Civ.P. 54(b). *See also* Fed.R.Civ.P. 62(h).

we have accepted jurisdiction on the basis of an order dismissing a complaint when the record has indicated "special circumstances." *Firchau v. Diamond National Corp.,* 345 F.2d 269, 270–71 (9th Cir.1965). We have also accepted jurisdiction when it is "clear" that the trial court found that "the action could not be saved by any amendment of the complaint which the plaintiff could reasonably be expected to make." *California,* 700 F.2d at 1218, (quoting *Marshall v. Sawyer,* 301 F.2d 639, 643 (9th Cir.1962)). *See also Hoohuli v. Ariyoshi,* 741 F.2d 1169, 1171 n. 1 (9th Cir.1984) (where we accepted jurisdiction (order dismissing complaint) because "the district court intended to dispose of the action"). *See generally* 9 J. Moore, *Moore's Federal Practice* ¶ 110.13[1] (2d ed. 1986 and 1985–86 Supp.).

█ In supplemental briefs addressed to the question, counsel have persuaded us that the district court, by dismissing the nongovernmental defendants outright and dismissing the remaining causes of actions against the governmental defendants, effectively dismissed the action against all the defendants. While this kind of wasted time should not be billed in any ensuing claim for attorney fees, the county has not been prejudiced. Accordingly, we conclude that the district court's dismissals support our jurisdiction under 28 U.S.C. § 1291.

### *The fourteenth amendment due process claim.*

The plaintiffs contend that the use of the roadblock was egregious police misconduct violating Brower's fourteenth amendment due process rights. The district court held, as a matter of law, that the roadblock did not violate Brower's due process rights. This ruling is challenged on both substantive and procedural grounds.

The nature of a so-called "substantive" due process claim in the police brutality context is outlined in *Rochin v. California,*

342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). In *Rochin,* the court reversed a conviction that had been partially based on evidence obtained by subjecting petitioner to a stomach pump while in police custody. The court reasoned that an individual's undefined substantive rights include the right to be free from governmental actions that "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." *Id.* at 169, 72 S.Ct. at 208. While the court did not articulate specific standards which identify police conduct violative of "substantive due process," it did state that such violations exist where conduct "shocks the conscience" or constitutes force that is "brutal" and offends "even hardened sensibilities." *Id.* at 172–73, 72 S.Ct. at 209–10. *See also Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937).[3]

In *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), Judge Friendly, speaking for the Second Circuit, articulated useful standards for substantive due process violations. Starting with the premise that violations of substantive due process by law enforcement must be more egregious than simple tort actions, he wrote that:

[I]n determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id.* at 1033.

In *Meredith v. State of Arizona,* 523 F.2d 481, 484 (9th Cir.1975), we adopted the

---

**3.** Note that there is a significant "boundary overlap" between the fourth amendment "reasonableness" test for police actions and the fourteenth amendment substantive due process "shocks the conscience" test. As neither category of right is subject to the *Parratt v. Taylor,* 451

U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), limitations, as yet, *see Robins v. Harum,* 773 F.2d 1004 (9th Cir.1985), the distinction, although troubling at the level of constitutional theory, has been accorded little practical significance for section 1983 litigation.

*Johnson* analysis. In *Meredith*, a claim arising out of an alleged prison beating by state officials, we stated that conduct violates substantive due process when it can fairly be characterized as "intentional, unjustified, brutal, and offensive to human dignity." *Id.* at 484.

In *Rutherford v. City of Berkeley*, 780 F.2d 1444 (9th Cir.1986), we applied the *Meredith* criteria and held that allegations of an unprovoked police assault—including repeatedly punching and kicking an individual in custody—stated a claim. *See also Johnson v. Barker*, 799 F.2d 1396, 1400 (9th Cir.1986) (sheriff's abuse of process and malicious prosecution did not give rise to due process claim); *Escamilla v. City of Santa Ana*, 796 F.2d 266, 268 (9th Cir. 1986) (failure of undercover police to protect innocent victim in a barroom shooting did not state a due process claim); *Gaut v. Sunn*, 792 F.2d 874, 875 (9th Cir.1986) (prison beating by guards did state a due process claim).

■ The first amended complaint asserts that specific factors in the creation and use of the roadblock by the Inyo County police violated substantive due process. In particular, paragraph 21 of the complaint alleges that the defendants "effectively concealed said truck [the tractor-trailer roadblock] from decedent's view by parking same behind a curve, failing and refusing to illuminate same and "blinding" decedent by parking a police vehicle in the center of the highway between said truck and decedent's approaching vehicle." For Rule 12 purposes we treat these allegations as true only because the district court dismissed for failure to state a claim. *Gaut*, 792 F.2d at 875. The allegations in paragraph 21 contain little more than bare conclusions, but if not sham or frivolous, they state a claim for violation of substantive due process. The allegations plead more than garden variety negligence in the construction of the roadblock.

*The fourteenth amendment procedural due process claim.*

The plaintiffs also contend that the roadblock violated Brower's fourteenth amendment procedural due process rights.[4] The district court, relying on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), dismissed this claim as well as the other attempts to plead that the officers deprived Brower of his life without due process of law.

■ The existence of remedies in the state courts or administrative agencies for deprivations of procedural rights does not necessarily bar otherwise valid claims brought under section 1983. *Parratt* bars recovery for property losses caused by random and unauthorized acts of state officials or private parties acting under "color of state law." *Parratt*, 451 U.S. at 543, 101 S.Ct. at 1917; *Rutledge v. Arizona Board of Regents*, 660 F.2d 1345, 1352 (9th Cir. 1981), *aff'd on other grounds sub nom. Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). An extension of *Parratt, Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), also bars recovery for isolated violations which result from intentional acts of state officers. Those cases, however, do not apply to the pending amended complaint.

The Supreme Court in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), expressly declined to extend the *Parratt* doctrine to bar claims alleging violations resulting from adherence to an established state policy, pattern, or procedure. Thus, if the deprivation of due process rights is alleged to result from application of a state pattern or practice, the availability, after the loss, of a state remedy is immaterial to the federal cause of action. *Logan*, 455 U.S. at 435–436, 102 S.Ct. at 1157–58.

We have applied *Logan*, and not *Parratt* or its progeny, when a complaint has adequately alleged that a state "pattern or practice" had led to fourteenth amendment violations. In *Sanders v. Kennedy*, 794

---

4. "Procedural due process" is a tautology that has become jargon. Our use of it does not imply approval of the term, but only our surren- der to its prevalence. It is probably too late to express continuing dismay over the use of the oxymoron "substantive due process."

F.2d 478 (9th Cir.1986), petitioners alleged that city police intentionally caused substantial damage to their home and motor vehicles during a "10–hour siege." In addition, the complaint alleged that the wrongful police conduct had been authorized by city officials and performed pursuant to an "official policy, practice, and custom" of the city. *Id.* at 482. Applying *Logan,* we held that the complaint stated a claim for a violation of due process and consequently that the district court erred in dismissing the complaint. *Id. See also Mann v. City of Tucson,* 782 F.2d 790, 798 (9th Cir.1986) (Sneed, J. concurring) (*Parratt* analysis is irrelevant to claims based upon an "unconstitutional state law, policy, procedure, pattern, or practice"); *Haygood v. Younger,* 769 F.2d 1350, 1359 (9th Cir.1985) (en banc) (*Logan,* not *Parratt,* applies where wrongful deprivation of liberty results from affirmatively enacted or de facto policies, practices, or customs), *cert. denied sub nom. Cranke v. Haygood,* —— U.S. ——, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986).

■ Paragraph 21 of the first amended complaint alleges that the defendants utilized the described roadblock method for detaining Brower "pursuant to a policy and procedure of defendants Inyo County and Inyo County Sheriff's Department." This allegation, because it purports to state a "pattern and practice" claim under *Logan,* survives Rule 12 dismissal based on *Parratt.* The use of roadblocks as a "pattern and practice" per se is not a violation,[5] but the pattern and practice of using a roadblock designed as a deathtrap, if established by proof, could be a violation of due process. A court should be reluctant to "declare a police practice of long standing 'unreasonable' if doing so would severely hamper effective law enforcement." *Tennessee v. Garner,* 471 U.S. 1, 19, 105 S.Ct. 1694, 1705, 85 L.Ed.2d 1 (1985). Whenever a challenge to the constitutionality of the use of a roadblock to apprehend a fleeing

felon has arisen in state court, the practice has uniformly been upheld. *Kagel v. Brugger,* 19 Wis.2d 1, 119 N.W.2d 394 (1963); *State v. Hatfield,* 112 W.Va. 424, 164 S.E. 518, 519 (1932). *See generally* J. Cook, *Constitutional Rights of the Accused: Pre-Trial Rights,* Arrest § 8 (1972 & 1984 Supp.).

Applying *Logan,* we hold that the elements of concealment and intentional blinding of the driver as a departmental policy and practice state a claim for violation of Brower's due process rights. Surviving Rule 12(b)(6) dismissal, however, does not assure a successful claim. At the summary judgment or later stages, the court may find no basis for proceeding if plaintiff produces nothing but conclusory allegations of a pattern or practice of employing deathtrap roadblocks to stop delinquent motorists.

*Fifth amendment and sections 1985 and 1988 claims.*

The plaintiffs also appear to reassert claims for relief, based on 42 U.S.C. § 1983, for violations of the fifth amendment, as well as claims under 42 U.S.C. §§ 1985 and 1988. These scattergun claims illustrate the quality of the pleadings placed before the trial court.

■ The due process clause of the fifth amendment constrains the activities and decisions of the federal government and its actors. The complaint alleged no federal involvement of any kind in the death of the decedent. The district court correctly dismissed the fifth amendment cause of action for failure to state a claim.

■ A valid section 1985(3) claim must be supported by allegations as to the existence of a conspiracy, with racial or discriminatory animus, to deprive a person of his civil rights. The amended complaint does not allege such a conspiracy. Accordingly, the district court correctly dismissed the section 1985 claim.

**5.** The record at the Rule 12 stage did not reveal whether the police car's emergency lights were flashing when it was situated in front of the roadblock. Affidavits filed in subsequent proceedings should clarify this matter. A roadblock is intended to give the driver an opportunity to stop before someone is killed or injured. Brower, unless the plaintiffs can come forward with proof to support their allegations of an intentional deathtrap, had complete freedom of choice, and rejected the option to stop.

Recovery of attorney fees under section 1988 is premised on the existence of a prevailing claim under sections 1983 or 1985. Section 1988 does not support an independent cause of action. No fees have been earned at this time, as the plaintiffs have recovered nothing. Most of the time spent by plaintiffs' counsel thus far has merely made extra work for the courts and the opposing counsel.

### Fourth amendment claim.

The plaintiffs also contend that the roadblock created by the police violated Brower's fourth amendment rights because it represented an unreasonable seizure by means of deadly force. The district court reviewed the circumstances leading up to the establishment of the roadblock and concluded, as a matter of law, that the use of the roadblock did not violate the fourth amendment.

To determine whether a pleading states a fourth amendment cause of action, courts apply a two-stage analysis emanating from *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). First, the court must determine whether there was a "seizure" in the fourth amendment sense. Second, the court must determine whether that "seizure" was accomplished in an unreasonably dangerous or inappropriate manner. *Galas v. McKee*, 801 F.2d 200, 202 (6th Cir.1986); *Robins v. Harum*, 773 F.2d 1004, 1009–10 (9th Cir.1985). The type of force employed (lethal or otherwise) is relevant in evaluating the "reasonableness" of police behavior.

With respect to the "seizure" question, the plaintiffs, relying on *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), contend that the roadblock was a "seizure" of Brower. We find no support in the cases for such a contention. Although Brower was stopped in the literal sense by his impact with the roadblock, he was not "seized" by the police in the constitutional sense. Prior to his failure to stop voluntarily, his freedom of movement was never arrested or restrained. He had a number of opportunities to stop his automobile prior to the impact.

An analogous situation arose in *Galas* where a police officer engaged in a high-speed chase of a fleeing traffic offender. The chase ended when the fleeing driver lost control and crashed. The question arose whether the crash was a "seizure" under the fourth amendment. The court concluded that there had been no seizure by the police because the officers had failed to impose restraint on the individual's freedom to stop or drive away. The court reasoned as follows:

> During the initial stages of the pursuit at issue here, plaintiff was not restrained at all.... During the latter stages—when plaintiff crashed—he was tragically not free to walk away. This restraint on plaintiff's freedom to leave, however, was not accomplished by the show of authority but occurred as a result of plaintiff's decision to disregard it.

*Galas*, 801 F.2d at 203.

We agree with the *Galas* decision. In this case, as the twenty-mile chase makes plain, Brower consciously chose to avoid official restraint. That decision, an exercise of autonomy, cannot fairly be viewed as a "seizure" by the police, under the fourth amendment. Brower's seizure, if any, was the result of his own effort in avoiding numerous opportunities to stop. We have found no cases which hold that a roadblock intended to stop a particular fleeing driver works a "seizure" of that driver. The cases cited by the plaintiffs are distinguishable. Each involves either fourth amendment claims by parties for whom the roadblock was not intended (*Jamieson v. Shaw*, 772 F.2d 1205 (5th Cir.1985)) or roadblocks created for reasons other than to stop a fleeing suspected felon. In *Jamieson*, the plaintiff was a passenger who presumably had no choice in the driver's election to crash into the police barricade. We see no need to stretch the fourth amendment seizure to provide another theory for a tort claim which involves the combined intentional conduct of both victim and defendants. That conduct can be fully evaluated under ordinary tort principles without any need to reach out for a bizarre definition of "seizure." Accordingly, we

hold that no fourth amendment "seizure" occurred.

Because we hold that there was no seizure, we need not determine "reasonableness" of police conduct challenged under the fourth amendment. Reasonableness may well be relevant in connection with claims alleged under the due process clause of the fourteenth amendment as discussed above. A court "must balance the nature and quality of the governmental intrusion ... against the importance of the governmental interests alleged to justify the intrusion." *Garner,* 471 U.S. at 8, 105 S.Ct. at 1699 (quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)). In a case in which an attempted arrest results in death, the court is required to decide whether the means by which the arrest was carried out were sufficiently justified by the need for the arrest. Unreasonable force under particular circumstances might violate due process. It adds nothing to a well pleaded due process claim to assert that there was an unlawful seizure. The court did not err in striking the fourth amendment claim.

*Dismissal of the nongovernmental defendants.*

The plaintiffs contend that the nongovernmental defendants were incorrectly dismissed from the action. The district court dismissed the nongovernmental defendants because it concluded that the complaint did not plead sufficient facts to link them to any alleged wrongdoing. *Cf. Adickes v. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). The court also was of the opinion that the nongovernmental defendants were immune from liability.

■ For a complaint to allege a valid claim against private parties for a deprivation of protected rights under section 1983, it must allege that specific conduct by a party was a proximate cause of the section 1983 injury. *King v. Massarweh,* 782 F.2d 825, 829 (9th Cir.1986); *Arnold v. International Business Machines Corp.,* 637 F.2d 1350, 1356 (9th Cir.1981).

In *King,* after a landlord's request for police intervention, tenants were roughly arrested by police officers. The tenants subsequently brought a section 1983 action, alleging violations of fourth amendment rights, against the police officers, the City of San Francisco, and the landlord. We held that the tenants' complaint stated a claim against the governmental defendants but not against the landlord. The landlord, although a "but for" cause of the police presence—his request for police assistance in effecting evictions led to the police involvement—was not sufficiently connected to the allegedly offending state action to have "caused" the acts to occur within the meaning of section 1983. *King,* 782 F.2d at 829.

In *Arnold,* IBM originally brought a trade secrets action against Arnold. In connection with the action, state officials wrongfully searched Arnold's residence. Arnold brought an action, under section 1983, against the state officials and IBM. We held that IBM did not proximately cause Arnold's injuries, within the meaning of section 1983, because there was no indication that it exercised any control over the wrongful state conduct. *Arnold,* 637 F.2d at 1356–57.

■ Defendants Missouri-Nebraska Express and Tractor Lease, Inc., were employers of defendant James N. Holmgren. The employer-defendants owned the tractor-trailer rig used by the police as a roadblock. While paragraph 16 alleges "on information and belief" that all the nongovernmental defendants were "acting within the course, scope and purpose of [an] agency with the [governmental defendants] and conspired among each other in doing all things herein alleged," the pleading is dangerously close to a Fed.R.Civ.P. 11 violation if not supportable by proof.

With respect to the employer defendants, the conclusory allegations of the complaint fail to allege with sufficient particularity any substantial involvement of defendants Missouri-Nebraska Express or Tractor Lease, Inc. in the creation or manner of use of the roadblock. In essence, each is linked to the roadblock solely by virtue of the ownership of equipment at a location con-

venient to the Inyo County police. No fact alleged against the employers could be a proximate cause of any of the alleged police wrongdoing within the meaning of section 1983. We also see no basis for concluding that the employers here "jointly engaged with state officials" in a prohibited activity ·capable of sustaining liability under section 1983. *Cf. Adickes,* 398 U.S. at 152, 90 S.Ct. at 1605. The district court properly dismissed them from the action.

The complaint contains ambiguous allegations that the driver, James N. Holmgren, exercised independent control over the positioning of the tractor-trailer across the highway. The district court noted in its decision and order of October 21, 1985, that "[P]laintiffs were unable at oral argument to state any facts showing that Holmgren exercised any discretion in the establishment of the roadblock". Moreover, plaintiffs stated in moving papers that Deputy Sides "commandeered an eighteen-wheel tractor-trailer rig and ordered the driver to block both the northbound and southbound lanes." Since Holmgren did not act from an independent motive or in a manner foreseeably harmful to Brower's civil rights, and did not agree to be a joint participant in prohibited acts of state officers, he cannot be held liable under section 1983. However, under the rule that the district court should construe pleadings in favor of the nonmoving party, Holmgren was prematurely dismissed. If, on further proceedings, plaintiffs fail to produce proof that Holmgren knowingly participated in any unlawful acts by the officers other than as a "commandeered" party, he should be dismissed with costs and attorney fees.

## CONCLUSION

We remand this action to the district court because it dismissed defendant Holmgren and the fourteenth amendment due process claims prematurely under Rule 12. We do not reach the merits. Other dismissals challenged in this appeal are affirmed.

Reversed in part, affirmed in part, and remanded for proceedings consistent with this opinion. No party to recover costs.

PREGERSON, Circuit Judge, concurring in part and dissenting in part:

I join all of the majority's opinion except for its application of the fourth amendment. I believe the police roadblock operated to "seize" Brower, and accordingly I would give appellants an opportunity to show whether the "seizure" was accomplished in an unreasonable manner. *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

Because the district court dismissed the plaintiffs' first amended complaint for failure to state a claim, all the allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiffs. *Plaine v. McCabe,* 797 F.2d 713, 723 (9th Cir.1986).

Police officers suspected Brower of driving a stolen vehicle. A high speed chase ensued. During the chase, the officers set up a roadblock to force Brower to stop. The roadblock consisted of an eighteen-wheel tractor-trailer placed across both lanes of a highway and a police car parked 200 feet in front of the tractor-trailer in Brower's approach path.

The complaint alleges that the officers "effectively concealed" the roadblock by parking the tractor-trailer behind a curve. The complaint also alleges that the police officers "blinded" Brower by shining police car headlights "directly into his eyes as he approached." The blinding effect of the headlights, the complaint concludes, caused Brower to crash into the roadblock and sustain fatal injuries.

The majority concludes that the police officers failed to "seize" Brower when he crashed. The opinion suggests that the roadblock could not operate to "seize" Brower because he "consciously chose· to avoid official restraint" by attempting to flee the police. I submit that the majority's analysis misapprehends the Supreme Court's test for establishing whether a "seizure" has occurred under the fourth amendment.

### 1. *Seizure*

A "seizure" occurs "whenever a police officer ... restrains [an individual's] free-

dom to walk away." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). Under this definition, there is no question that the Inyo police "seized" Brower. The officers intended to stop Brower and did stop him by setting up the roadblock. The officers totally deprived Brower of his freedom to walk away.[1]

In *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985), the Supreme Court held that "apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." In that case, police officers suspected Edward Garner of having committed a burglary. Pursued by the officers, Garner, who was unarmed, ran across a yard and encountered a six-foot chain link fence. An officer told him to stop, but Garner began climbing the fence. The officer shot Garner in the back of the head and killed him. The Supreme Court found that the shooting of the unarmed fleeing suspect constituted an unreasonable seizure in violation of Garner's fourth amendment rights.

I believe that *Garner* compels finding that the Inyo police officers "seized" Brower when he crashed into the roadblock. As in *Garner*, this case involves the use of deadly force by the police to apprehend a fleeing suspect. In both cases, the suspect might have been well-advised to surrender, but the fact that he resisted police authority does not change the fact that the police physically "seized" his person. In both cases, the police deprived the suspect of his ability to walk away in the most absolute and tragic sense.

The majority opinion argues that because Brower retained his freedom of movement until the crash, the crash itself was not a "seizure." The opinion states:

Although Brower was stopped in the literal sense by his impact with the roadblock, he was not "seized" by the police in the constitutional sense. Prior to his failure to stop voluntarily, his freedom of movement was never arrested or re-

strained. He had a number of opportunities to stop his automobile prior to the impact.

The fact that Brower could have voluntarily submitted to police authority before crashing into the roadblock is irrelevant in determining whether a "seizure" occurred. The fleeing suspect in *Garner* also retained his freedom of movement prior to his failure to stop voluntarily. But in *Garner*, a "seizure" nevertheless occurred the moment the officer deprived the suspect of his freedom to walk away. Here, too, Brower's freedom to walk away was restrained by the police. His decision to flee merely delayed the moment at which the "seizure" ultimately occurred.

A Fifth Circuit case supports the view that a police roadblock operates to "seize" its victims. In *Jamieson v. Shaw*, 772 F.2d 1205 (5th Cir.1985), the plaintiff was a passenger in a car that struck a roadblock set up by the police on a state highway. The driver of the car, stopped at a traffic light, initiated a high speed chase by accelerating away from a police car. During the ensuing chase, police called for assistance. Highway patrol officers set up a "deadman" roadblock, consisting of an unlighted police car parked laterally in the middle of the highway just over the crest of a hill. As the driver's car reached the top of the hill, police flashed a spotlight into the driver's eyes, blinding him and causing him to crash into the roadblock.

In *Jamieson*, the Fifth Circuit reversed the district court's decision dismissing the plaintiff's fourth amendment claim without leave to amend. The Fifth Circuit found that "[the plaintiff] was 'seized' for purposes of the Fourth Amendment when the officers deliberately placed the roadblock in front of the car in which they knew she was a passenger." *Id.* at 1210.

The majority opinion attempts to distinguish cases, such as *Jamieson*, that involve fourth amendment claims brought by persons for whom the roadblock was not intended. If there is a valid distinction be-

---

1. The district court did not even question whether a "seizure" had occurred. The court implicitly assumed that the roadblock "seized" Brower and concluded that use of the roadblock was reasonable.

tween the cases, it cuts in favor of allowing Brower's survivors to bring a claim. In *Jamieson,* the court found that a person who was *not* the target of a police roadblock could state a fourth amendment claim. In this case, however, Brower *was* the target. Indeed, this case is a clearer example of a "seizure" because the police actually intended to apprehend the victim of the roadblock—Brower.

Contrary to what the majority opinion suggests, *Galas v. McKee,* 801 F.2d 200 (6th Cir.1986), is not analogous to the case before this court. In *Galas,* officers were engaged in high speed pursuit of a fleeing motorist. A roadblock was not involved. The pursuit ended when the motorist lost control of his automobile and crashed off the side of the road.

The Sixth Circuit found that the motorist had not been "seized" because the officers did not cause his accident. The court reasoned that "[o]nly when [an] officer, *by means of physical force or show of authority,* has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* at 203 (quoting *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16) (emphasis added). In *Galas,* "[t]here was no exercise of physical force ... [nor was the motorist] restrained by ... the officer's show of authority." *Id.* The motorist crashed because of his inability to maneuver at the high speeds of the chase.

Unlike the police officers in *Galas,* the police in this case *did* restrain Brower's freedom to leave. The police caused Brower to crash by setting up a roadblock to stop him.

Because the roadblock used to stop Brower constituted the use of physical force by police to apprehend a fleeing suspect, I would hold that the roadblock operated to "seize" Brower for purposes of the fourth amendment.

### 2. *Reasonableness*

Because I would hold that the roadblock "seized" Brower, I would reach the question whether police accomplished the "seizure" in an unreasonable manner.

The fourth amendment requires that "searches" and "seizures" be reasonable. "Reasonableness" depends on not only the justifications for a particular intrusion, but also on how the intrusion is carried out. *Garner,* 471 U.S. at 7–8, 105 S.Ct. at 1699–1700.

In *Garner,* the Supreme Court found that "[t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable." *Id.* at 11, 105 S.Ct. at 1701. The Court held that when a suspect poses no immediate threat to officers or the public, the harm resulting from the failure to apprehend the suspect does not justify the use of deadly force. However, the Court noted that the use of deadly force was not per se unreasonable. When officers have probable cause to believe that a suspect poses a significant threat to public safety, the Court suggested that the use of deadly force might be reasonable:

"[I]f the suspect threatens [an] officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, *where feasible, some warning has been given." Id.* at 11–12, 105 S.Ct. at 1701 (emphasis added).

In this case, the district court ruled that as a matter of law the roadblock the Inyo police officers used to apprehend Brower was not an unreasonable use of deadly force. The court noted that the high speed chase posed a substantial threat to the officers and the public. Thus, the court concluded that the roadblock was a reasonable response to the perceived dangers of the chase.

The district court also found that Brower was warned of the existence of the roadblock by the police car that officers parked in the middle of the highway. The court stated that it was not required to accept as true the plaintiffs' allegation that the police car headlights blinded Brower and prevented him from seeing the tractor-trailer. "It

is not alleged," the court observed, "that [Brower] survived the collision long enough to so inform anyone of this."

This finding is improper. The fact that Brower is no longer living does not preclude finding that police "effectively concealed" the roadblock as the plaintiffs allege. The accident scene can be re-created and expert testimony can be offered to show that Brower was unable to see the roadblock before he crashed. The plaintiff's allegation that Brower could not see the roadblock was a factual allegation that the district court was required to accept as true for purposes of the motion to dismiss. *Plaine v. McCabe*, 797 F.2d 713, 723 (9th Cir.1986).

The plaintiffs' complaint, properly construed, indicates that police may have failed to give Brower adequate warning of the roadblock, as required by *Garner*, 471 U.S. at 11–12, 105 S.Ct. at 1701–02. Therefore, the plaintiffs should be entitled to show at trial whether Brower could in fact have seen the roadblock before he crashed.

If the Inyo police officers set up the roadblock so that Brower, after seeing it, could not have stopped in time to avoid a crash, the roadblock could constitute an unreasonable use of deadly force in violation of Brower's fourth amendment rights. Roadblocks are appropriate devices for police to use in apprehending dangerous criminals. A fleeing felony suspect poses a grave danger. However, the mere presence of danger does not entitle the police to employ any type of roadblock, especially one that could be expected to cause the suspect's death. As the Supreme Court observed in *Garner*, "[i]t is not better that all felony suspects die than that they escape." *Garner*, 471 U.S. at 11, 105 S.Ct. at 1701. A police roadblock that is designed to lead a fleeing suspect to his death, in my view, constitutes an unreasonable use of deadly force and violates the fourth amendment.

For these reasons, I would reverse the district court's decision to dismiss the plaintiffs' fourth amendment claim.